CARTER, et al. *v.* PACE

No. 40101 April 2, 1956 86 So. 2d 360

*Russell Wright,* Meridian, for appellants.

*Snow & Covington,* Meridian, for appellee.

ETHRIDGE, J.

This case involves the question of whether a provision in a deed is sufficient to constitute a restrictive covenant limiting the use of the lot conveyed to residential purposes.

Appellants A. G. and Lewis Carter, devisees of A. J. Carter deceased, and five other owners of lots in the subdivision in question, brought this suit in the Chancery Court of Lauderdale County against appellee D. A. Pace. The bill sought to enjoin Pace from operating a garage on lot No. 7 in the A. J. Carter Subdivision, and

to enjoin him from using it for any purpose other than residential; and to abate the operation of the garage as a nuisance. In the 1920's A. J. Carter owned the land in question, had it surveyed and created the A. J. Carter Subdivision. The plat was recorded. The land is in Lauderdale County, immediately outside of the city limits of Meridian, and consists of 12 lots on the east side of and fronting upon Poplar Springs Road. The complainants A. G. and Lewis Carter at the time the suit was filed and in May 1955 were the sole devisees of A. J. Carter, their father, and still own Lots 10, 11 and 12 in the subdivision, which was created for the development of a residential area. Most of the lots are developed with private homes on them. From the pictures in the record and the undisputed testimony, these houses are well made, attractive and comfortable residences.

Pace first purchased from A. J. Carter Lot 6. The deed of this lot from Carter to him contained the following restriction: "It is further understood and agreed that the above described property is to be used primarily for residential purposes. No building shall be constructed on said property for commercial use." The width of the lot was not sufficient to allow Pace to have an adequate area for a driveway and playground for his children, so on September 5, 1947, A. J. Carter conveyed to Pace Lot 7, which is the lot immediately to the south of Pace's Lot 6, upon which is situated his residence. It is this deed to Lot 7 which is involved in this case. It conveys to Pace the property describing it as Lot 7 as per map of said Subdivision as recorded. The deed then provides: "It is further understood and agreed that the above described property is to be used for residential purposes."

Toward the rear of Lot 7 Pace completed in 1954 a large garage type building, 30 x 40 feet, which he developed into a commercial automobile and truck garage and "muffler shop". He has a large sign on the front

of this lot describing it as "The Muffler Shop" and above that "Garage". Pictures in the record show several automobiles and trucks parked toward the front and middle of the lot in front of the garage building. It is admitted that Pace uses this building for a commercial garage and muffler shop. The evidence reflects that it is operated a good part of each day in the week, including some night work and including Sundays; and that considerable noise emanates from the garage during the times it is operated.

The question is whether the provision in the deed of September 5, 1947, to Pace from Carter is an enforceable restrictive covenant, limiting the use of the property to "residential purposes" and excluding its use for a commercial garage. After hearing the evidence, the chancellor held that although A. J. Carter probably had in his mind the idea of making the subdivision a restricted residential one, "this court does not believe that the legal steps were taken that are necessary to so make it and to bind the purchasers of the lots or the subsequent purchasers of the lots in the use of their property for only residential purposes". The trial court did not think that "the legal requirements to accomplish this" were carried out. However, the chancery court held that the operation of the place constituted a nuisance in fact, and it enjoined Pace from operating any other hours than those of between 8:00 A.M. and 6:00 P.M. on weekdays, and enjoined operations on Sunday. Appellants have taken a direct appeal from this decree, and Pace has taken a cross-appeal, contending that the evidence was not sufficient to support the finding of the chancellor that the operations constituted a nuisance in fact.

██ █ This Court has held that a restrictive covenant limiting the use of lots in a subdivision to residential purposes, and prohibiting its use for commercial purposes is reasonable, violates no public policy, although

of indefinite duration, and does not restrain alienation or violate the rule against perpetuities. Kilpatrick v. Twin States Realty Co., 193 Miss. 599, 10 So. 2d 447 (1942). That case was first decided by the trial court by overruling a demurrer to the bill seeking to enforce the restrictions. The decree was affirmed and remanded, and after a second and full hearing in the chancery court, the bill was dismissed. This action was affirmed on appeal in Twin States Realty Co. v. Kilpatrick, 199 Miss. 545, 23 So. 2d 752. The appellee-defendant in that case constructed a tearoom and gift shop in connection with her house, and appellant made no complaint about her continued activities of this business for over 6 years. It was said that the chancery court was warranted in finding that the complainant was estopped by laches and acquiescence in the defendant's non-commercial use of the property.

In Magnolia Textiles v. Gillis, 206 Miss. 797, 41 So. 2d 6 (1949) it was held that a restrictive covenant prohibiting for 10 years use of the property for any type of textile industry was ambiguous, and that the chancellor was warranted, after hearing extrinsic evidence of the intention of the parties, in holding that this restriction did not prohibit its use for the manufacture of garments. Other discussions of restrictive covenants are found in 14 Am. Jur., Covenants, Secs. 206-207; 26 C. J. S., Deeds, Sec. 162; Anno. 19 A. L. R. 2d 1274 (1951).

██ ██ We do not think that the covenant in the 1947 deed to Pace is ambiguous. The question is not before us of whether the restrictive covenant in question applies to an apartment house or other type of residential building. The issue here is whether the provision in the deed that the parties "agree" that the property "is to be used for residential purposes" has the effect of prohibiting its use for a commercial garage. We think that the plain meaning of the terms of the deed has that effect.

This provision expressly states that the parties have "understood and agreed" that the property "is to be used for residential purposes". In other words, it is more than a statement of purpose, and more than a statement of the intent of the parties as to what the grantee intends to use the property for. ██ ██ By this provision, the parties *agree* that it will be used for residential purposes. The word "agree" means to bring into agreement, to cause one to accede or consent to a matter, to arrange or to settle a matter. That is, the parties have contracted and stipulated to that effect. This contract, being made effectual by appellee's acceptance of the deed, is to the effect that he will use the property "for residential purposes". This is a clear statement of the intention and meaning of the restrictive covenant in the deed of September 5, 1947, to Pace.

██ ██ Restrictions placed by the grantor on the use of property conveyed will be enforced if the intent to create them is clear, and if they are not contrary either to law or public policy and are reasonable. 7 Thompson, Real Property (Perm. Ed. 1940), Sec. 3567. The general rule pertinent to the interpretation of restrictions upon the use of property is stated in Thompson, supra, Sec. 3569: "The rules governing the construction of covenants imposing restrictions on the use of realty are the same as those applicable to any contract or covenant, including the rule that, where there is no ambiguity in the language used, there is no room for construction and the plain meaning of the language governs. When construction is necessary, the language used will be read in its ordinary sense, unless the context shows that it was used in a different sense, and the restriction will be construed in the light of the circumstances surrounding its formulation and imposition and with the idea of effectuating its object, purpose and intent. Restrictions are to be fairly and reasonably interpreted according to their apparent purpose. On the one hand

they are not to be construed narrowly, and on the other hand they are not to be unduly enlarged.'' Many cases dealing with restrictive covenant for residential purposes are discussed in Secs. 3584-85 on Thompson. See Snow v. Van Dam, 291 Mass. 477, 197 N. E. 224.

Section 3598 deals with ''erection of garage as violative of restrictive covenants''. It is there said: ''Where a deed contains a covenant that the premises shall be used for residence purposes only, and that the buildings to be erected thereon shall be confined to dwelling-houses, such covenant is violated by the erection thereon and maintenance of a garage; . . .'' Goater v. Ely, 80 N. J. Eq. 40, 82 Atl. 611; Hepburn v. Long, 146 App. Div. 527, 131 N. Y. Supp. 154; Gross v. Whitelaw, 20 Ohio Cir. Ct. (N.S.) 116.

 In view of these rules of interpretation, and of the plain terms of the covenant, the chancery court was in error in holding that the covenant was insufficient to restrict the use of Lot 7 to residential purposes.

It has been said that in the absence of a reverter clause, a mere statement in a deed that land is to be used for a specified purpose is merely a declaration for the purpose of conveyance, and does not in any way limit the grant. 26 C. J. S. 508. However, this principle and the two cases cited to support it are not applicable to the restrictive covenant in the Pace deed. Frederic v. Merchants & Marine Bank, 200 Miss. 755, 28 So. 2d 843 (1947) involved primarily the question of whether a deed had been delivered. It was held that it had. It was further said that since the directors of the grantor-bank in their resolution authorizing execution of the deed expressly provided that the deed should not contain a provision that the land should not be used for any commercial purpose other than tourist cottages, and where such agreement was allegedly made only by parol, the delivered deed, being without any such restriction, could not be the basis of a suit to enforce a reverter of the

title to the grantor. The Frederic case is not pertinent to the present issue.

In brief, the restrictive covenant in the deed represented an agreement and contract by the grantor and grantee that the property would be used for residential purposes, and appellee's undisputed violation of that contractual agreement can be enjoined by appellants in this action. Hence the decree of the chancery court is reversed on the direct appeal, and judgment will be rendered here enjoining appellee from violating the restrictive covenant in the deed, and more particularly prohibiting him from operating a commercial garage and "muffler shop" on the property conveyed by the deed. Since the decree is reversed and judgment rendered here, the cross-appeal becomes moot.

Reversed and judgment rendered for appellants.

*Roberds, P.J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.