*McGehee, C. J., and Gillespie, Rodgers and Jones, JJ.,* concur.

GILL, et al. *v.* RILEY, et al.

No. 42427          November 5, 1962          145 So. 2d 921

*Green, Green & Cheney,* Jackson, for appellants.

*Hall, Callender* & *Dantin,* Columbia, for appellees.

McElroy, J.

This is an appeal from a final decree of the Chancery Court of Marion County, Mississippi, sustaining a motion of appellees to strike the answer of appellants and awarding appellees relief sought by their bill of complaint, the appellants having declined to plead further.

Appellees filed their bill in the chancery court "to cancel claim of the defendants to ownership of the land in question, joining Jimmie Gill, Citizens Bank and A. A. Buckley, Trustees, as defendants." The bill averred title to this property had passed from the United States of America to Blodgett and that by mesne conveyances, title passed and ultimately became vested in W. M. Riley, who was a common source of title for all claimants. The bill alleged that W. M. Riley died intestate on March 5, 1948, leaving appellants as his sole and only heirs-at-law.

By deed dated March 9, 1929, a two-acre tract of land was conveyed by W. M. Riley and Wife, Annie Riley, to C. E. Williams and I. L. Thompson, and a copy of this deed was exhibited with the bill. This instrument contained the following covenant and agreement, to wit: "A further consideration of this bill as mentioned above is that the grantees will erect and operate on said land a cotton gin for the purpose of ginning cotton, and when said lands shall cease to be used for the location of a cotton gin thereon, it shall then revert to the grantors, their heirs or assigns."

The bill further alleged that thereafter on June 10, 1929, in order to more accurately describe said property, the said W. M. Riley and wife, Annie Riley, again conveyed said property to C. E. Williams and I. L. Thompson, and a copy of this deed is also exhibited with the bill. This instrument contained the following covenant and agreement: "It is understood and agreed that when the above described lands shall cease to be used for the maintenance of a cotton gin location, it shall then revert to the grantors, their heirs or assigns." The bill further alleged that shortly after the execution of the deeds by the grantors to the grantees, a cotton gin was built and established upon the property and the cotton gin was operated by Williamson and Thompson, and by their respective grantees through the year 1957, and

was used and maintained as a cotton gin during all of this period. Complainants averred that no cotton gin was operated upon said property during the ginning seasons of 1958, 1959, 1960 or 1961; that in the months of May and June 1961, all of the cotton gin machinery and equipment were dismantled and removed from the property and the cotton gin building was razed and removed from the property; that the property has long since ceased to be used as a cotton gin for the purpose of ginning cotton or for the maintenance of a cotton gin located on the property; that for these reasons title to said property has reverted to complainants as sole and only heirs-at-law of W. M. Riley, in accordance with the express terms, provisions, and covenants contained in the deed; and that complainants are now the sole, true, legal, and equitable owners of the property in fee simple.

The Mississippi Cottonseed Products Company, warrantor in the conveyance to Jimmie Gill, filed its motion for leave to intervene, and a decree was entered authorizing the intervention. Appellants then filed their answer to the bill. Appellants, in their answer, stated that the deed from W. M. Riley and Wife to C. E. Williams and I. L. Thompson also contained the following provision: ''As a further consideration of this deed the grantees obligate and bind themselves, their executors, administrators, assigns and lessees not to operate on said property nor on property adjacent thereto a mercantile business of any kind for a period of thirty-six years from the date thereof.'' And as an affirmative defense in their answer, appellants aver that this provision contained in the two deeds was ''unreasonable and unlawful'', and that this part of the consideration was illegal, and the entire provision of said deed assuming to cause a reverter was null and void and illegal. Appellants averred in further affirmative defense that the adoption by the Congress of the United States of

the Agricultural Adjustment Act of 1938, Tit. 7, U. S. C. A., Sec. 1281, et seq., had, in effect, destroyed the cotton business and imposed great losses upon the Mississippi Cottonseed Products Company, with the result that it was no longer profitable to operate a cotton gin upon the land in question, and that by reason of such Federal interposition, appellees are without right to invoke said alleged provision in the deed.

Appellees filed a motion to strike the answer of appellants because "it is insufficient in law" to constitute a defense.

Before hearing on the motion, counsel for the parties entered into a stipulation wherein it was agreed that W. M. Riley operated a store until the month of August 1931, when he and his wife conveyed to I. G. Polk a nine-acre tract of land on the east side of the public road, lying immediately north of the two-acre gin tract; and that W. M. Riley discontinued the operation of the store at that time.

There is no dispute between the parties concerning any of the pertinent facts. The trial court sustained appellees' motion to strike the answer, and appellants refused to plead further.

As stated above, the deed contained the following provision: "It is understood and agreed that when the above-described land shall cease to be used for the maintenance of a cotton gin location, it shall then revert to the grantors, their heirs or assigns." It shows that the grantors were careful to expressly provide that when the property shall cease to be used as a cotton gin location, it shall revert to the grantors, their heirs or assigns. There is nothing in this deed to indicate that they meant anything other than that, when the cotton gin location ceased, the land should revert to the grantors and their heirs or assigns.

The courts have sometimes held that restrictive covenants relating to use of property in estates granted

on conditional limitations and conditions subsequent are not favored by the law. But generally they have upheld these provisions when the language employed by the parties clearly shows their intent; and there can be no doubt that the parties intended to create such an estate. Under these facts there is no doubt that the parties to this transaction clearly and unequivocally agreed that, when the property ceased to be used in the operation of a cotton gin, it would thereupon revert to the grantors, their heirs and assigns. Both of the deeds given in this case contain this provision.

In 19 Am. Jur., Estates, Sec. 82, p. 545, it is said: "Impossibility of performance of a condition subsequent which is not attributable to the grantee results in the vesting of the estate freed from the condition. The same result follows where the condition possible at the time of its creation subsequently becomes incapable of performance by reason of circumstances attributable to the grantor, to acts of the third person to whom the services constituting the condition are to be rendered, to acts of a codonee, such as a cograntee, colegatee, or codevisee, or to an act of God. The condition is not affected, however, by the grantee's pecuniary inability to perform it." The incapacity to perform certainly was not attributable to the grantor or to the acts of third persons to whom the services constituting the condition of the deed are to be rendered; nor to acts of the codonee, such as cograntee, colegatee, or codevisee; and certainly not to an act of God, in any way shown from the record of this case.

The grantors in the original deed clearly showed their intent with reference to the estate which they created. The grantees were obviously aware of the intent and purpose. The operation of a gin on the land for the purpose of ginning cotton ceased. Under the terms of the deed, the land reverted, as provided therein. This Court has repeatedly upheld reversions under similar

circumstances. See Daniel v. Jacoway, Freeman's Chancery 59 (1 Miss. 57).

In the case of Jones v. Burns, et al., 221 Miss. 833, 74 So. 2d 866, where a parcel of land was deeded to the Trustees of the East Union Consolidated School, and their successors, "so long as said above-described land is used for the East Union White Consolidated School, when said above-described land ceases to be used for the purposes mentioned above, it is to revert to the owner (description) * * *". The Court held:

"The intention of the parties is the final test. 'The courts have consistently adhered to the view that in their interpretation of covenants, the cardinal principle, or most persuasive guide for them to follow, is the intention of the parties as it may appear or be implied from the instrument itself.' 14 Am. Jur. 486, Section 7.

"Now, Jones conveyed the property to the school 'so long' as it might be used for school purposes. It was not a conveyance of a fee simple title cut down by a later limitation. The only title the school ever had was during the time the property should be used for school purposes. The title ceased when the school use ended. Jones and the Trustees knew that."

See also Maxwell v. Miss. Valley Co., 95 Miss. 466, 48 So. 610; Y. & M. V. R. R. Company v. Lakeview Traction Co., 100 Miss. 281, 56 So. 393; New Hebron Consolidated School District v. Sutton, 151 Miss. 475, 118 So. 303; Ricks, et al. v. Merchants National Bank & Tr. Co., 191 Miss. 323, 2 So. 2d 344; Kilpatrick v. Twin States Realty Co., Inc., 193 Miss. 599, 10 So. 2d 447; Carter v. Pace, 227 Miss. 488, 86 So. 2d 360.

We see no merit in the contention of appellant as to the Agricultural Act. The grantor of the deed could not possibly have known of the Agricultural Adjustment Act, and of course could not have taken it into consideration. This was something foreign to anything that he could have done. The sole question before

us is the maintenance of a cotton gin on the two-acre tract, and when the cotton gin ceased to operate as a business, the reversionary clause became operative, therefore vesting title in the grantor and his heirs. We believe that the learned chancellor was eminently correct in striking the answer of appellants and in granting appellees the relief sought. The case is therefore affirmed.

Affirmed.

*Lee, P. J., and Kyle, Ethridge and Gillespie, JJ.,* concur.