MAXWELL, J.,
for the Court:
¶1. In 1973, R.B. Moor, Charles H. Moor, and Marion M. Moor conveyed real property to the state, which promised to fulfill three conditions: to (1) utilize the property to construct a state park, (2) expend $2 million or more in constructing the park, and (3) begin construction before July 1,1976. The state began construction *851 of the Florewood River Plantation Park (Florewood Plantation) in 1974, spending more than $2 million on the project over the next decade. The state operated Florewood Plantation as a state park until 2005, when it leased the park to Leflore County based on the Legislature’s 2004 authorization to close, transfer, lease, or sell. Aggrieved because the state is no longer operating Florewood Plantation, the successors of R.B., Charles, and Marion[1] filed a declaratory action, seeking reversion based on the state’s failures to (1) use the property as a state park and (2) spend $2 million in “construction.”
¶ 2. In granting summary judgment and dismissing the Moors’ claim, the chancellor declared the state owner of the property in fee simple, holding the 1973 deed contained no reversionary language and no requirement the state continue to use the property as a historical state park. The chancellor also found the state undisputedly had met all three deed conditions. On de novo review, we find the deed unambiguous. The deed did not require perpetual operation of a state park, and it did not limit the $2 million “construction” expenditures to buildings and fixtures. Therefore, we affirm the grant of summary judgment.
FACTS
¶ 3. In May 1973, R.B. Moor, Charles H. Moor, and Marion M. Moor entered an options contract with Leflore County to purchase more than 100 acres of real property for the purpose of building a state park or “Living Historical Plantation.” In August 1973, trustees for the Leflore County School District purchased the property from R.B., Charles, and Marion. As part of the consideration, the school district agreed to the following three conditions in the warranty deed:
The above described property is conveyed to the grantees herein [1] subject to the condition that the said grantees or their successors in title utilize said property for the construction of a Historical Park, and [2] subject to the condition that $2,000,000.00 or a greater sum, will be expended in constructing said Historical Park on the property herein conveyed, and [3] subject to the condition that said construction shall begin on or before July 1,1976.
¶4. To further encourage timely construction of the historical park, the deed contained the following clause:
In the event construction is not begun on the Historical Park within the time specified, the grantors, their heirs or assigns, shall have the exclusive option to purchase said property for the sum of $750.00 per acre for a period of 120 days from the first breach of the foregoing conditions, which privilege shall be binding on the grantees, their successors or assigns, it being hereby agreed that the cash consideration to be paid hereunder in the event of breach of these conditions is substantially less than the present market value of said property and that the moving consideration is to aid in the construction of a Historical Park.
¶ 5. The school district later transferred the property to Leflore County, which in December 1973 transferred the property to the state (through Mississippi Parks Commission, now Mississippi Wildlife, Fisheries, and Parks). These later deeds transferring the property to the county and the state contained essentially the same three conditions about the park’s construction.
¶ 6. The state began constructing Flore-wood Plantation before July 1, 1976. *852 From 1974 to 1985, the state spent more than $2 million on the park’s site planning, museum buildings, museum exhibits, furniture, equipment, picnic area, and tram system.
¶ 7. The state operated the park for twenty years. But in 2004 the Legislature authorized Mississippi Wildlife, Fisheries and Parks to “close, transfer, lease or sell” Florewood Plantation. 2004 Miss. Laws H.B. 1741 § 21. So in 2005 the state leased the park to Leflore County.
PROCEDURAL HISTORY
¶ 8. Upset by the state’s leasing the property, the Moors[2] filed for declaratory judgment against the State of Mississippi, Leflore County, and Leflore County School District (collectively, the state), claiming the deed’s conditions “were not satisfied, or have otherwise ceased to exist.” The Moors asked the chancery court to declare the property had reverted back to the Moors or, alternatively, grant the Moors the right to repurchase the property for $750 per acre.
¶ 9. On cross summary-judgment motions, the chancellor denied the Moors’ motion and granted the state’s, dismissing the Moors’ declaratory-judgment action with prejudice and declaring the state fee-simple owner of the property. The Moors now appeal.
STANDARD OF REVIEW
¶ 10. We review summary-judgment motions de novo. Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999). “[A] motion for summary judgment is granted only when the trial court finds that the plaintiff would be unable to prove any facts to support his claim.” Id. “On appeal, the lower court’s decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party.” Id. An ambiguous contract raises questions of fact, making summary judgment inappropriate. Shelton v. Am. Ins. Co., 507 So.2d 894, 896 (Miss.1987) (citing Dennis v. Searle, 457 So.2d 941, 945 (Miss.1984) (overruled on other grounds)).
DISCUSSION
I. Deed Interpretation
¶ 11. The Moors argue the state violated the intended purpose of the property’s transfer by failing to (1) continue to use the property as a historical state park and (2) expend $2 million on the park’s buildings and fixtures. Our concern is not “what the parties may have meant or intended but what they said, for the language employed in a contract is the surest guide to what was intended.” Williams v. Williams, 37 So.3d 1196, 1200 (¶ 10) (Miss. Ct.App.2009) (quoting Ivison v. Ivison, 762 So.2d 329, 335 (¶ 17) (Miss.2000)); see Gordon v. McGee, 966 So.2d 906, 908 (¶ 8) (Miss.Ct.App.2007) .(quoting Rogers v. Morgan, 250 Miss. 9, 21, 164 So.2d 480, 484 (1964)) (“[T]he intent of the parties [is] gathered from the plain and unambiguous language contained therein.”).
¶ 12. We construe deeds like contracts, first looking to the “four corners” of the deed and the language the parties used to express their agreement. Williams, 37 So.3d at 1200 (¶ 10); Martin v. Fly Timber Co., Inc., 825 So.2d 691, 696 (¶ 11) (Miss.Ct.App.2002). “When the language of the contract is clear or unambiguous, we must effectuate the parties’ in *853 tent.” Williams, 37 So.3d at 1200 (¶ 10) (citing Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss.1990)). If the parties’ intent is still uncertain, we next employ, with discretion, the canons of contract construction. Id. Then, if necessary, we consider parol or extrinsic evidence. Id.
¶ 13. We begin by looking to the “four corners” of the August 1973 warranty deed to the school district, the only deed signed by the R.B., Charles, and Marion. This deed extinguished, or merged, the provisions in the prior options contract. See Knight v. McCain, 531 So.2d 590, 595 (Miss.1988) (discussing the “firmly ingrained” doctrine of merger). We would only consider as parol evidence the provisions of the options contract or the two subsequent deeds from school district to county and county to state if we found the August 1973 deed ambiguous.
II. Reversion and the Option to Repurchase
¶ 14. The Moors argued the intended purpose for transferring their property was for its use as a historical state park. Because the state no longer uses the property as a historical state park, but instead leases the property to the county, the Moors reasoned it should revert to them. Alternatively, they request the option to repurchase the property for $750 an acre. But the Moors asked the chancellor to enforce a restriction on the state’s use of the property that cannot be found or inferred from the language of the deed.
¶ 15. “[T]here [can] be no reversion unless the grantor intended the deed should have that effect, and the deed so provided in plain terms[.]” Nicholson v. Myres, 170 Miss. 441, 449, 154 So. 282, 283 (1934). Similarly, “[restrictions intended to limit the use of property to a particular purpose should not be left to implication, but should be clearly defined and understood by the parties.” Frederic v. Merchants & Marine Bank, 200 Miss. 755, 766, 28 So.2d 843, 847 (1947). “In the absence of a reverter clause, a mere statement in a deed that the land is to be used for a specified purpose is merely a declaration of the purpose of the conveyance, and does not in any way limit the grant.” Id. (citation omitted).
¶ 16. The Moors’ deed had no reverter clause. There is no provision that the property shall revert in the event the property is not used as a historical state park, and there is no provision the state should have the property “so long as” it is used as a historical state park. Cf. Pearson v. City of Louisville, 539 So.2d 1046, 1046—47 (Miss.1989); Burnham v. City of Jackson, 379 So.2d 931, 932 (Miss.1980); City of Laurel v. Powers, 366 So.2d 1079, 1081 (Miss.1979); Gill v. Riley, 244 Miss. 768, 773, 145 So.2d 921, 922 (1962) (all containing clear expressions of grantor’s intent to impose condition and create re-versionary interest).
¶ 17. Nor does the deed clearly restrict the state’s use of the property to operating a historical state park. In fact, the deed does not require the state operate a park at all, let alone for perpetuity. The only condition on use of the property was the requirement the grantee “utilize said property for the construction of a Historical Park.” (Emphasis added) Once construction began in 1974, this condition was satisfied. Meeting this condition also ended the Moors’ option to repurchase, available only “[i]n the event construction is not begun on the Historical Park within the time specified.”
¶ 18. We cannot restrict the state’s use of its property to operating a historical park when the deed conveying the proper *854 ty did not. The Moors’ reliance on statements in the options contracts or the two subsequent deeds about the “purpose” of the conveyance is misplaced. This case is similar to Frederic v. Merchants & Marine Bank, where the conveying bank indicated in its deed that it was transferring the property for the purpose of building a residence. 200 Miss, at 765-66, 28 So.2d at 846-47. The bank tried to keep the deed when W.E. Frederic decided to use the property commercially. Id. at 847. But the supreme court declared that Frederic was not restricted to residential use. Id. Without a reverter or clear language restricting the use of the property to residential purposes only, the deed’s purpose language was “merely a declaration” and not a limitation on the use of the property. Id.
¶ 19. Had the Moors intended to restrict the state’s use of the property for a historical park, they, like the bank in Frederic, should not have left it to implication. See id. Instead, they should have clearly defined the limitation in the August 1973 deed.
¶ 20. Therefore, we affirm the chancellor’s dismissal of the Moors’ claim they had a right to reversion or repurchase based on the state’s leasing the property.
III. The Construction of “Construction”
¶ 21. The Moors also argue the state failed to meet all three conditions for constructing the historical park. There is no question the state utilized the property to construct a historical park (condition 1) and began construction before July 1,1976 (condition 3). The only condition we must address is whether the state expended $2 million or more “in constructing [the] Historical Park” (condition 2).
¶ 22. In support of its motion for summary judgment, the state presented an itemized list of its expenditures on Flore-wood Plantation, showing the state spent more than $2 million from 1974 to 1985. The Moors did not dispute the list’s accuracy. Instead, the Moors claimed not all of the listed expenditures were “construction” costs because they did not pay for buildings or fixtures. Specifically, the Moors argued only $1,820,924.71 of the $2,051,362.91 spent was for “construction.” [3] The remaining $230,438.20 spent on “site planning,” “furniture and equipment,” and “exhibits,”[4] they argued, was not on “construction” costs.
¶23. The mere fact the parties dispute what falls under the definition of “construction” does not make the term ambiguous as a matter of law. Williams, 37 So.3d at 1200 (¶ 10) (quoting Ivison, 762 So.2d at 335 (¶ 16)). When words are not defined in the deed, we give them their commonly accepted meaning. Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 836 (¶ 19) (Miss.2003) (citation omitted) (applying Webster’s New Collegiate Dictionary *855 definitions to disputed contract words); see also Perkins, 558 So.2d at 852 (“This so-called ‘four corners’ doctrine calls for construction through application of correct English definition and language usage.”) (internal quotations omitted).
¶ 24. Because the 1973 deed does not define “construction” or “constructing,” we look to the commonly accepted meaning of “construct.” To “construct” means “to form by assembling or combining parts.” The American Heritage Dictionary 405 (3d. ed.1992); see also Black’s Law Dictionary 355 (9th ed.2009) (defining “construction” as “[t]he act of building by combining or arranging parts or elements”).
¶25. The Moors essentially argue the furniture and exhibits were not part of the “construction” of the park because they were not buildings or fixtures. But neither the common definition of “construction” nor its use in the deed is so limited. The deed did not require the state to spend $2 million in constructing “the buildings and fixtures” but instead in constructing the “Historical Park.”
¶ 26. The state allocated $2 million for the Florewood Plantation project and used all of its budget on physical items it assembled to create the historical park, including furniture, equipment, and exhibits. Moreover, the facility had been completed and available for the Moors’ inspection for twenty years before they first complained the state had not spent enough on construction. See Twin States Realty Co. v. Kilpatrick, 199 Miss. 545, 26 So.2d 356 (1946) (holding waiting more than six years to complain barred plaintiffs’ ability to raise issue of failure of condition subsequent).
¶ 27. Therefore, the chancellor did not err in finding the $2 million construction-expenditure condition, along with the other two construction conditions, had been met.
CONCLUSION
¶ 28. The language in the 1973 warranty deed controls. And the Moors’ claims are not supported by the deed’s language. The deed did not create a reversionary interest, did not condition the state’s use of the property to a historical park, and did not require the state to spend at least $2 million just on brick-and-mortar buildings and fixtures.
¶ 29. The undisputed facts show the state met all three conditions under the deed. Therefore, we affirm the chancellor’s denial of summary judgment to the Moors and grant of summary judgment in favor of the state, declaring it the fee-simple owner of the property.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. In 2001, Betty Pearson Moor and Robert Baird Moor became co-conservators of R.B.’s estate. Also, in 2001, Janie Logan Moor inherited Charles’s estate.

. Throughout this opinion, "the Moors” refers to the appellants Betty Pearson Moor and Robert Baird Moor, conservators of the estate of Robert Baird Moor. Janie Logan Moor did not participate in this appeal.

. The Moors contend the following items were not "construction” costs: Site Planning ($15,000), Furniture and Equipment ($110,-850.20), Cotton Museum Exhibits ($67,000), and Exhibits ($37,588).