ISHEE, J.,
for the Court:
¶ 1. In 2007, Joel Misita purchased approximately 8.226 acres of land (the three acres) in Natchez, Mississippi, from Kevin and Rebecca Wilson. The three acres were properly conveyed by a warranty deed containing a covenant prohibiting the building of any structures on the property. The Wilsons and Misita were neighbors with the three acres adjoining their properties. The Wilsons later sold their land to Roy A. Conn (Al) and his wife, Mitzi Conn. Shortly thereafter, Misita placed a movable advertisement sign for his business on the three acres. The Conns objected to the placement of the sign, and sought enforcement of the warranty deed’s covenant in the Adams County Chancery Court in May 2011. In October 2011, after a trial on the merits, the chancery court ruled in favor of the Conns and ordered the structure to be removed from the three acres. On appeal, Misita asserts the covenant is ambiguous and unenforceable. We reverse and render the chancery court’s determination that the sign constitutes a structure. We affirm the chancery court’s determination that the covenant is a permissible real covenant running with the land.
STATEMENT OF FACTS
¶ 2. In 2007, Misita and the Wilsons were neighbors in Elgin & Grove Plantation, a community in Adams County, Mississippi. Prior to the sale of the three acres, the Wilsons' property consisted of approximately thirty acres with a single residence. Misita’s land consisted of approximately seven acres with several structures positioned on the property. The main home on Misita’s land is an unusually tall three-story structure that houses Misita’s wood and metalworking business on the bottom floor and his residence on the top two floors. The main house measures over sixty-two feet tall. Also present on the property are multiple outbuildings, including a large woodworking facility, several large trailers, a small cabin on a hill, and various sheds.
¶ 3. In November 2007, Kevin commissioned Misita to build a copper vent hood for the Wilsons’ house. Misita agreed to construct the hood for the Wilsons and pay them ten dollars in exchange for the three acres. Kevin agreed to Misita’s proposal. However, according to Misita, Kevin looked up at Misita’s towering home and commented that the land would only be conveyed on the premise that no structures may be built on the three acres. Misita testified that he replied: “Fine.” On November 16, 2007, after the copper hood was delivered and Misita had given the *177 Wilsons ten dollars in cash, the Wilsons executed a warranty deed conveying the three acres to Misita with the following covenant: “No structures are to be erected on the property.”
¶ 4. In June 2008, the Wilsons sold the property and the residence to the Conns. About two years later, Misita decided to build a large movable sign on wheels to advertise his business. The sign is triangular in shape measuring eighteen feet long on all sides and is approximately fifteen feet tall. It contains a floor, a metal roof, and a door. Misita stores various examples of his work inside, and designed the sign to show to potential clients his work, as well as advertise his business to passersby on the highway. It is connected to pipes that are sunk into the ground and secured by concrete; however, the sign is movable. It is positioned on a trailer and has wheels so that Misita can take the sign to trade shows or to clients’ homes. Initially Misita was granted a trailer license with the sign. Currently, Misita must obtain a special permit in order to transport the sign.
¶ 5. Prior to placing the sign on the three acres, Misita discussed the sign’s placement with the Conns. The Conns considered Misita’s proposition as a request to eliminate the covenant, and ultimately decided that enforcement of the covenant was in their best interest. The Conns communicated this decision to Misi-ta by a written letter dated April 12, 2010, that was mailed by certified mail with a return receipt requested. Therein, they acknowledged Misita’s proposition and their decision. They also stated that they had relied on the covenant in their decision to purchase their property from the Wil-sons. They advised Misita that they would seek enforcement to the covenant should Misita continue with his plan to place the sign on the three acres.
¶ 6. Misita soon placed the sign on the three acres, and the Conns subsequently filed suit on May 4, 2011. The chancery court conducted a hearing on the Conns’ complaint on September 27, 2011. On October 25, 2011, the chancery court issued extensive findings of fact and conclusions of law, and determined that the covenant prohibited Misita’s placement of the sign on the three acres. Misita quickly filed a motion for reconsideration, which was denied. He now appeals the chancery court’s judgment.
DISCUSSION
¶ 7. The Mississippi Supreme Court has stated the following with regard to issues involving the interpretation of contracts:
Such issues are questions of law reviewed by our appellate courts under a de novo standard of review. We first look to the express wording of the contract itself, looking at the contract as a whole, to the exclusion of extrinsic or parol evidence. If the parties’ intent is unclear, the court will utilize the applicable “canons” of contract construction. Finally, if the meaning remains ambiguous, only then may the court consider extrinsic evidence.
Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (¶ 8) (Miss.2010) (internal citations omitted). The supreme court has further held that “it is not the function of the courts to make contracts for parties, but rather to give effect to them as written ... [and] to adhere to the principle so deeply embedded in our jurisprudence that the plain and unambiguous language of a contract should be construed as written.” Vulcan Materials Co. v. Miller, 691 So.2d 908, 912 (Miss.1997) (citations omitted).
¶ 8. In his first issue on appeal, Misita claims the chancery court erred in finding that the covenant in question was a real covenant that runs with the land instead of a personal covenant. In order for *178 a covenant to be real, the evidence must show the following:
(1) [T]he covenanting parties intended to create such a covenant;
(2) [P]rivity of estate exists between the person claiming the right to enforce the covenant and the person to whom the burden of the covenant is to be imposed; and
(3) [T]he covenant “touches and concerns” the land[.]
Id. at 914.
¶9. Accordingly, we now analyze the intent of the parties while first addressing any possible ambiguities with regard to the covenant’s language. The covenant states: “No structures are to be erected on the property.” The parties differ in their determination of the original intent of the term “structure.” The chancery court cited Conservatorship of Estate of Moor v. State, 46 So.3d 849 (Miss.Ct.App.2010), in correctly stating: “[T]he mere fact that parties dispute what falls under the definition of a term to the contract does not make the term ambiguous as a matter of law. If the words are not defined in the deed, the court gives them their commonly accepted meaning.”
¶ 10. According to Random House Webster’s Unabridged Dictionary 1887 (2nd ed.2001), the definition of a structure, when used as a noun, is “something built or constructed, as a building, bridge, or dam.” We, therefore, determine that this commonly accepted meaning of the term “structure” was the intention of the original parties when placing the word in the covenant.
¶ 11. The sign clearly does not fall within the purview of a bridge or a dam. However, a building is defined as “a relatively permanent enclosed construction over a plot of land, having a roof and usually windows and often more than one level, used for any of a wide variety of activities....” Random House Webster’s Unabridged Dictionary 274 (2nd ed.2001). While the sign embodies some of the characteristics of a building, such as a roof and being enclosed, it is not relatively permanent. It is not permanently affixed to the land since it has wheels and can be pulled behind an automobile. Misita purposefully built the sign with wheels so he could transport it to trade shows and clients’ homes as an example of his work.
¶ 12. Random House Webster’s Unabridged Dictionary 2109 (2d ed.2001) defines a vehicle as “any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport.” Misita built the sign for the purpose of conveying a prime example of his work to potential clients. The sign was not intended to be nor is it a permanent or relatively permanent building situated on the three acres. The sign is akin to the commonly accepted definition of a vehicle, not a building. Therefore, we find that the sign in question does not fall within the purview of the commonly accepted meaning of “structure.”
¶ 13. Finding no ambiguity in the covenant’s language, we move on to the parties’ intent to enter into the covenant. Prior to drafting the deed, Kevin told Misi-ta, while viewing Misita’s large house and numerous outbuildings, that he did not want any structures built on the property, to which Misita responded: “Fine.” Misita acknowledges that he understood Kevin’s aversion to Misita’s numerous buildings on his property and agreed to refrain from erecting such structures on the three acres. The intent of the parties is clear.
¶ 14. Next, it is without question that there was privity of estate between the Conns and Misita. Privity of estate exists when there is a “successive relationship to the same [r]ights of property.” Clement v. R.L. Burns Corp., 373 So.2d 790, 794 (Miss.1979) (citation omitted). “Privity implies succession. He who is in *179 privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it charged with the burden attending it.” Id. (citation omitted).
¶ 15. In Journeay v. Berry, 953 So.2d 1145, 1155 (¶ 25) (Miss.Ct.App.2007), we held that owners of lots in a residential development were in privity of estate with the developers after they purchased the lots and agreed to be bound by the restrictive covenants contained in the lot deeds. Even before Misita was granted the deed for the three acres, he was made aware of the covenant. Hence, like in Journeay, Misita was advised of the covenant and, upon receipt of the deed, had actual notice of the covenant. The covenant was not hidden or located on a separate piece of paper from the rest of the deed. Rather, it was present on the first page of the one- and-a-half-page deed in a paragraph beginning with: “NOTWITHSTANDING THE WARRANTY HEREIN CONTAINED, this conveyance is subject to the following.” The covenant in question was listed as the fifth and final covenant.
¶ 16. When the Conns bought their property from the Wilsons, the privity of enforcing the covenant transferred to them by virtue of the purchase of the land. The Wilsons merely passed the power of enforcing the covenant to the Conns since the Conns became the successors in relationship to the same property right. The Conns testified that they relied upon the covenant in deciding to purchase the property from the Wilsons. They were assured by the Wilsons that the covenant would prevent Misita from “junking up” the three acres as they opined he had done on the rest of his property. The authority of the covenant was transferred to the Conns by virtue of the purchase of the property, and, therefore, clearly establishes privity of estate between the Conns and Misita.
¶ 17. Finally, in order for a covenant to “touch and concern the land,” it “must be so related to the land as to enhance its value and confer a benefit upon it, or, conversely, impose a burden on it.” Journeay, 953 So.2d at 1155 (¶ 26) (citation omitted). It is without question that the covenant touches and concerns the three acres in that it burdens the property by prohibiting structures from being erected. Misita himself argues that the covenant is a burden and, arguably, will always be a burden on the land. As such, the evidence supports the determination that the covenant in question was, in fact, intended to be a real covenant to run with the land.
¶ 18. In his second argument on appeal, Misita asserts that the covenant is unenforceable because it is unreasonably restrictive due to the indefinite nature of the covenant. However, we have upheld indefinite restrictive covenants in the past. In Stokes v. La Cav Improvement Co., 654 So.2d 524, 529 (Miss.1995), the supreme court upheld a covenant prohibiting the construction of a boathouse, storage shed, or other like outbuilding on a lot in residential community. Likewise, in Gast v. Ederer, 600 So.2d 204, 207-08 (Miss.1992), the supreme court upheld the destruction of a boathouse as violating a covenant stating: “No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling not to exceed two stories in height and a private garage for not more than two cars.” Likewise, here, we find that the covenant existed only for the three acres in question and did not, in any way, restrict Misita from placing structures on the other seven acres of his land that did not adjoin the Conns’ property. We find this acceptable, and this issue is without merit.
¶ 19. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT *180 IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEES.
LEE, C.J., IRVING, P.J., ROBERTS AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., BARNES AND JAMES, JJ. MAXWELL, J., NOT PARTICIPATING.