# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00689-SCT

*LAKE SERENE PROPERTY OWNERS
ASSOCIATION INC.*

*v.*

*CLYDE DELBERT ESPLIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/2020 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| TRIAL COURT ATTORNEYS: | PHILLIP LLOYD LONDEREE |
| | LEWIE G. "SKIP" NEGROTTO, IV |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PHILLIP LLOYD LONDEREE |
| ATTORNEY FOR APPELLEE: | LEWIE G. "SKIP" NEGROTTO, IV |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This appeal presents a question of first impression in Mississippi as to whether short-term rentals of private homes through online services such as Airbnb, VRBO, and HomeAway are residential uses of property for the purposes of a restrictive covenant. The trial court's finding that Clyde Delbert Esplin's use of his property was residential and that short-term rentals were allowed under the covenants is affirmed as is the trial court's finding that the amended bylaws restricting property rentals were invalid.

## FACTS

¶2.     Lake Serene is a residential subdivision in Lamar County, Mississippi, that is encumbered with restrictive covenants that run with the land. The covenants give the Lake Serene Property Owners Association (hereinafter, "LSPOA") the right to enforce the covenants. The covenants previously allowed property owners to rent out their property without any specified minimum rental period. The covenants did, however, limit the use of the properties to residential purposes, and they prohibited the use of property for trade or business of any kind.

¶3.     The LSPOA discovered Esplin was listing his property in Lake Serene for rent on the internet service Airbnb in June 2018. The LSPOA determined this to be a violation of the charter, bylaws and covenants and sent Esplin a series of letters and emails that put him on notice of the alleged violations. The LSPOA warned Esplin that, if he continued with the alleged violations, it would issue fines and take further legal action.

¶4.     The LSPOA then amended its bylaws via a board of directors resolution on October 16, 2018. The amendments prohibited renting property for terms of less than 180 days. After amending the bylaws, the LSPOA filed suit seeking to prevent Esplin from utilizing his dwelling as a short-term rental on Airbnb.

¶5.     The chancery court found that Esplin's use of his property was residential, not commercial, and denied the request of the LSPOA for injunctive relief. Additionally, the court found that the amended bylaws restricting property rentals were invalid. Further, the chancery court granted Esplin's counterclaim and found that the covenants allowed for short-

term rentals and that all fines and assessments levied against Esplin by the LSPOA were invalid. The chancellor also enjoined the LSPOA from preventing Esplin from renting his property short-term, harassing his tenants and keeping them from using the common-area facilities, and the chancellor prohibited the LSPOA from using the Lamar County Sheriff's Department to enforce its covenants.

## STANDARD OF REVIEW

¶6.     This Court has held that "questions concerning the construction and interpretation of contracts are questions of law[,]" which are reviewed de novo. ***Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.***, 857 So. 2d 748, 751 (Miss. 2003) (citing ***Warwick v. Gautier Util. Dist.***, 738 So. 2d 212, 214 (Miss. 1999); ***Miss. State Highway Comm'n v. Patterson Enters., Ltd.***, 627 So. 2d 261, 263 (Miss. 1993)). If a contract is determined to be ambiguous, the trial court's judgment is reviewed on appeal under a substantial evidence/manifest error standard. ***Id.*** at 752.

## DISCUSSION

### 1.     Whether the trial court erred by finding that Esplin's listing of the property did not constitute commercial use.

¶7.     The covenants governing the LSPOA restrict the use of property to "residential purposes only." But the term "residential purpose" is not defined in the covenants. The determination of whether short-term rentals through services such as Airbnb constitute "residential purposes" is a matter of first impression in Mississippi.

¶8.     An Alabama appellate court said that "residential purposes" meant "a place of abode, even if the persons occupying the cabin are residing there temporarily during a vacation."

3

***Slaby v. Mountain River Ests. Residential Ass'n, Inc.***, 100 So. 3d 569, 579 (Ala. Civ. App. 2012) (internal quotation marks omitted). The Court in ***Slaby*** relied on ***Lowden v. Bosley*** and ***Mullin v. Silvercreek Condominium, Owner's Ass'n***, decisions from Maryland and Missouri, in which those courts found that so long as the property is being used in a way that an abode would typically be used, such as for eating, sleeping, and bathing, it is being used for "residential purposes." ***Slaby*** 100 So. 3d at 578; ***Lowden v. Bosley***, 909 A.2d 261 (Md. 2006); ***Mullin v. Silvercreek Condominium, Owner's Ass'n***, 195 S.W.3d 484 (Mo. Ct. App. 2006).

¶9.     A Texas appellate court likewise determined that receiving income from a rental property did not constitute commercial activity when all commercial aspects of the rental property were conducted online, no funds were exchanged on the property, and no offices or signage were present on the property. ***Schack v. Prop. Owners Ass'n of Sunset Bay***, 555 S.W. 3d 339, 353 (Tex. Ct. App. 2018) (citing ***Tarr v. Timberwood Park Owners Ass'n, Inc.***, 556 S.W.3d 274, 289-90 (Tex. 2018)).

¶10.    A District Court of Appeal of Florida has also determined that the use of property as a place of abode, no matter how short the rental period, is considered use "for residential purposes." ***Santa Monica Beach Prop. Owners Ass'n, Inc. v. Acord***, 219 So. 3d 111, 115 (Fla. Dist. Ct. App. 2017).

¶11.    We find these sister-state cases to be persuasive. Here, like the rentals in ***Slaby***, the property was being used as a place of abode. Esplin's residents rented out his house anywhere from one day to thirty days. They were using the property to eat, sleep and bathe.

4

Further, like the rentals in **Schack**, all commercial activity and exchange of funds occurred online and not on the property. There were no signs or offices located on Esplin's property. Even though the property had been rented out for as little as one day, we agree with the Florida court in **Acord** that when the property is used as a place of abode, the use is considered residential no matter how short the rental period. **Acord**, 219 So. 3d at 115.

¶12. The LSPOA contends that this Court should side with the Supreme Courts of Pennsylvania and New Hampshire that have found that short-term rentals are considered "transient use" of property not residential in nature. **Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.**, 207 A.3d 886, 903 (Pa. 2019); **Working Stiff Partners, LLC v. City of Portsmouth**, 232 A.3d 379, 384 (N.H. 2019). But we observe that these cases involved zoning ordinances rather than restrictive covenants. **Slice of Life**, 207 A.3d at 888-89; **Working Stiff Partners**, 232 A.3d at 381. The LSPOA contends that permanence rather than transience is what sets apart a residential purpose from a commercial purpose. However, the LSPOA fails to acknowledge that the covenants allow renting of the property and, in most cases, rentals are not permanent. Rather, rentals typically involve a fixed period of time, whether that be three years or two weeks. Moreover, the chancellor found that the tenants of these short-term rentals can and often do provide their own amenities and receive mail at the property. The salient point is whether or not the property itself is being used in a manner that a place of abode would be used, not how long the property is being used as a place of abode.

5

¶13. Thus, we affirm the chancery court's determination that Esplin's use of his property was residential and did not violate the restrictive covenants. We also affirm the court's invalidation of all fines and assessments levied against Esplin.

> **2. Whether the trial court erred by finding Esplin's use of the property was not classified as a nonconforming use and did not violate the covenants.**

¶14. This Court, in a prior case involving the same property owners association, observed that "[g]enerally, courts do not look with favor on restrictive covenants." *Kemp v. Lake Serene Prop. Owners Ass'n, Inc.*, 256 So. 2d 924, 926 (Miss. 1971) (citing 20 Am. Jur. *Covenants* §§ 185-87), *overruled on other grounds by Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454 (Miss. 1983). "Such covenants are subject more or less to strict construction and[,] in the case of ambiguity, construction is usually most strongly against the person seeking the restriction and in favor of the person being restricted." *Id.* at 926 (citing 20 Am. Jur. *Covenants* §§ 185-87).

¶15. The covenants expressly permit the delegation of the use of the "right of enjoyment to the Common Property and facilities" to family members, tenants or contract purchasers who reside on a property within the association. Additionally, the covenants reference throughout the rights and responsibilities of tenants residing on property within Lake Serene. While the covenants in this case do not specify a minimum or maximum amount of time a homeowner can rent out their property, they do state that tenants are allowed to use the property and the common spaces in the same manner as the owner. Therefore, the covenants, when read in their entirety, do not prohibit short-term rentals. Since the covenants do not

6

specifically address short-term rentals, construing the covenants in the light most favorable to the party being restricted, which would be Esplin, and against the LSPOA, the entity seeking the restriction, makes clear that Esplin's use of his property for short-term rentals is allowed under the covenants.

**3. Whether the trial court erred by finding that the adoption of the property-use rules in the bylaws of the LSPOA were invalid because they constituted an unauthorized amendment to the covenants governing the LSPOA**.

¶16. We have concluded that Esplin's use of his property was in conformity with the covenants, which do not prohibit short-term rentals. But the key issue in this case is whether the trial court was correct in finding that the adoption of bylaws prohibiting short-term rentals was an unauthorized amendment to the covenants. We agree with the trial court.

¶17. Restrictive covenants should be strictly read.

> Generally, courts do not look with favor on restrictive covenants. Such covenants are subject more or less to a strict construction and[,] in the case of ambiguity, construction is usually most strongly against the person seeking the restriction and in favor of the person being restricted.

*Kemp*, 256 So. 2d at 926 (citation omitted). In addition, this court has stated

> "[Restrictive covenants] . . . should be fairly and reasonably construed[,] and the language used will be read in the ordinary sense [citation omitted]. The entire instrument should be considered in ascertaining its meaning, but the restrictions should not be extended by strained construction, especially when, as in this case, the restrictive covenants expressly permit the use being made of the land."

*Kinchen v. Layton*, 457 So. 2d 343, 346 (Miss. 1984) (third alteration in original) (quoting

*Schaeffer v. Gatling*, 243 Miss. 155, 159, 137 So. 2d 819, 820 (1962)). Restrictive

covenants should be "fairly and reasonably interpreted according to their apparent purpose."

7

*Mendrop v. Harrell*, 233 Miss. 679, 103 So. 2d 418, 422 (1958) (citing *Carter v. Pace*, 227 Miss. 488, 86 So. 2d 360 (1956)).

¶18. Our Court of Appeals decided a similar case in ***Kephart v. Northbay Property Owners Ass'n***, 134 So. 3d 784 (Miss. Ct. App. 2013). We agree with the reasoning in ***Kephart*** and conclude that it is controlling. In ***Kephart***, the Northbay Property Owners Association brought suit against members because they allegedly violated the association's ban on leases. ***Kephart***, 134 So. 3d at 785. Initially, the association's protective covenants allowed leasehold interests for residential purposes if certain requirements were met. ***Id.*** However, prior to the Kepharts' purchase of their land, the board of directors of the property owners association adopted a resolution to prevent their members from leasing their properties. ***Id.*** By adopting a resolution, the board of directors was able to avoid the requirements in the protective covenants that would trigger a vote of the landowners. The Kepharts argued that, regardless of how the resolution was labeled, the board of directors' authority to place restrictions on the homeowners was limited by the protective covenants. Reply Brief of Appellants at 1, 2, ***Kephart***, 134 So. 3d 784 (No. 2012-CA-1691-COA).

¶19. The Court of Appeals in ***Kephart*** held "that prohibiting the leasing of residences would be considered an amendment and not a rule. Because the right to amend the [protective covenants] is 'reserved only to the Members,' the Board did not have authority to enact the Resolution; therefore, the Resolution is void." ***Kephart***, 134 So. 3d at 786.

¶20. The amendment requirements in ***Kephart*** are similar to the amendment requirements of the LSPOA governing documents in this case. Amendment of the protective covenants

in *Kephart* required approval "by a Supplement properly filed for record and executed by owners of at least 90% of the lots if amended, modified[,] and/or changed prior to January 1, 2025, and thereafter by the Owners of at least 75% of the Lots." *Id.* (alteration in original). Similarly, article XIII, section 2, of the LSPOA covenants states that the protective covenants

> may be amended and / or changed in part with the consent of the majority of the Lot Owners . . . if amended and / or changed during the thirty-five (35) year period of this [covenant] and thereafter said Covenants may be amended or terminated with consent of at least seventy-five (75%) of the Lot Owners. . .

¶21. The Northbay Property Owners Association and the LSPOA protective covenants are unambiguous in their requirement that the board of directors not exercise authority in matters that are reserved for the members. The Northbay Property Owner Association protective covenants stated that "the Board of Directors shall have power, authority and duty to do all acts and actions, except acts and actions which by law, this [covenant], the Charter or the By-laws may be exercised only by or are reserved only to the Members." Brief of Appellants at 4, 5, *Kephart*, 134 So. 3d 784 (No. 2012-CA-01691-COA). The LSPOA's protective covenants contain similar language in article V, section 1, which states that "the Board of Directors shall have all the Power and Authority to do all acts and things except those which by law or by the [protective covenants] or by the Charter or by the By-laws may be exercised and done only by the members."

¶22. Both the Northbay Property Owners Association board of directors and the LSPOA board of directors had authority to pass rules regarding use of property. The Northbay

covenants stated that the board of directors may "[a]dopt, promulgate and enforce such rules, regulations, restrictions and requirements as . . . the Board of Directors may consider to be appropriate with respect to the Property, the Lots, [and] the Leasehold Interests. . . ." Record Excerpts at 4, *Kephart*, 134 So. 3d 784 (No. 2012-CA-01691-COA). Article XI, section 1, in the LSPOA protective covenants states that "the Board of Directors may establish reasonable rules and regulations concerning the use of Lots, [and] dwellings . . . ."

¶23. Neither the LSPOA covenants nor bylaws include a provision similar to that referenced in the *Kephart* bylaws requiring certain material changes to the bylaws be approved by 51 percent of the holders of a recorded first mortgage. The bylaw provision in *Kephart* stated:

> "no amendments of a material nature shall be made without the consent of fifty-one percent (51%) of the holders of a recorded first mortgage. An amendment to change any of the following would be considered as material: . . . (x) Leasing of Residence except as set forth in Section 1 of Article XI . . . ."

*Kephart*, 134 So. 3d at 785. However, this is a distinction without significance. This provision only provides additional protection to the rights of the holders of recorded first mortgages in certain limited circumstances and defines what constitutes a material change for purposes of *amending the bylaws*. One provision granting additional protection to the mortgage holders against material changes to the bylaws does not affect the ultimate holding in *Kephart*: that a resolution of the board of directors cannot be used to amend covenants that otherwise requires a vote of the landowners and does not affect the outcome of the case at hand. The fact that Northbay's bylaws designated certain changes to their bylaws as material

10

does not mean the changes to the LSPOA documents here were not material. They clearly were.

¶24. The *Kephart* bylaws, not the covenants, required amendments to the bylaws making "material changes" (i.e. leasing of residences) be approved by 51 percent of the first recorded mortgage holders, not homeowners. This language is all contained in the bylaws. No language to this effect is found in the *Kephart* covenants. The Court of Appeals in *Kephart* rightly concluded that "[b]ecause the Bylaws state that changes to the leasing of residences need to be made by amendment it is clear that these changes could not be made by the Board through passing the Resolution." *Kephart*, 134 So. 3d at 786. The Court of Appeals further concluded that the rule changing the leasing requirements was invalid and "[w]hile the Board has the power to enact rules and regulations, those rules cannot involve rights that 'may be exercised only by or are reserved only to the Members.'" *Id.*

¶25. Just as in *Kephart*, the LSPOA passed a rule that had the effect of avoiding a vote by the members, thereby accomplishing an end-around of the covenants and their vote requirement. This is what *Kephart* condemns. The overarching principle of *Kephart* is that the board of directors of a homeowner's association should not be able to exercise its rule-making authority to bypass the rights reserved to the landowners as evidenced by the covenants. Neither the *Kephart* covenants nor the LSPOA covenants in this case contains language specifically stating an amendment to change the leasing of residences would have to be voted on by the homeowners, and both allow the board of directors to establish rules regarding the use of lots. However, just as in *Kephart*, the board of directors' actions in this

11

case were wrong. Any rule that conflicts with the rights vested to the landowners through the covenants requires an amendment to the covenants, absent language in the covenants to the contrary. Per authority granted in article XI, section 1, of the covenants, the board of directors of the LSPOA was given the right to create and enforce reasonable rules concerning the use of property. A reasonable rule cannot be one that contradicts the rights of the landowners set forth in the protective covenants, especially when the landowners have reserved the right to amend the covenants. The dissent lays out several pieces of evidence presented at trial related to violations of current rules by short-term tenants that it claims support the reasonableness of the rule change in question. However, the trial judge heard the trial testimony and determined that the rule, rather than being reasonable, constituted an invalid amendment to the covenants. The trial court was correct in its finding that the amendment to the bylaws adopted by the LSPOA board of directors was in effect an invalid amendment to the LSPOA covenants.

¶26. The trial court did not err by finding the LSPOA board of directors did not have the authority to amend the bylaws to restrict the covenant rights of the LSPOA property owners.

## CONCLUSION

¶27. The chancery court correctly found that Esplin's use of his property for short-term rentals did not violate Lake Serene's covenants because it constituted a residential use. Further, the court was also correct in finding that the covenants, when viewed as a whole, do not specify that short-term rentals are prohibited. Finally, the chancery court was correct in

12

finding that the adoption of bylaws restricting the rental of property was, in fact, an invalid amendment to the covenants. The decision of the chancery court is, therefore, affirmed.

¶28. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN AND MAXWELL, JJ., CONCUR. ISHEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J. BEAM, J., NOT PARTICIPATING.**

**ISHEE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶29. I agree that the short-term rentals at issue amounted to a residential use and were not prohibited by the covenants. But the covenants forbid non-residential uses; they do not guarantee the unrestricted right to any residential use. The covenants in fact say nothing about an owner's right to lease his property, other than a few passing references to "tenants." They certainly do not guarantee an unrestricted right to lease. Thus, I cannot join the majority in its conclusion that the adoption of a bylaw setting a minimum rental term somehow amounted to a constructive amendment of the covenants.

¶30. The covenants in this case specifically allow the LSPOA board of directors to adopt rules and regulations regarding the properties and common areas. Article XI, section 1, states, in relevant part:

> Rules and Regulations. (a) Subject to the provisions hereof, the Board of Directors may establish reasonable rules and regulations concerning the use of Lots, dwellings, and the Common Property and Common Facilities located thereon.

13

¶31.    The October 2018 amendments to the bylaws were enacted after a unanimous vote of the board.  The vote was taken in compliance with the preexisting mechanism for amending the bylaws, which states:

> **Art. XI**: These by-laws may be repealed, changed, modified or amended and additional by-laws enacted by the Board of Directors at any regular meeting, or at any special meeting called for that purpose, where such purpose is stated in the call for such a special meeting; but, in order to do so, it shall require the affirmative vote of two-thirds (2/3) of all the members of the Board of Directors.

¶32.    Testimony at trial established that short-term tenants were often unfamiliar with the rules governing the common areas of Lake Serene.  This led to incidents in which short-term tenants were endangered when boating. Other short-term tenants refused to follow rules regarding the use of the common properties even when asked, and short-term tenants often left trash in the common areas.  One short-term tenant held a large party that caused a disturbance to the surrounding neighborhood that required the sheriff's department to be called.  In the course of this incident, a sheriff's deputy was injured, and stolen firearms were recovered. Another short-term tenant set up a firing range on Esplin's property.  These incidents and others were cited by the board of directors to establish the reasonableness of amending the bylaws.

¶33.    Esplin argues that these amendments to the bylaws were illegal because they amounted to an amendment of the covenants, which would have required a vote by the property owners.  Esplin relies on a Court of Appeals case, *Kephart v. Northbay Property Owners Association*, 134 So. 3d 784, 785 (Miss. Ct. App. 2014).  In *Kephart*, the Court of Appeals found that a bylaw *completely* prohibiting the leasing or renting of property

amounted to a constructive amendment of the covenants in that case. *Id.* But *Kephart* relied entirely on basic contract law and the particular terms of the covenants and bylaws in that case. *Id.* The bylaws in *Kephart* specifically required that, in order to make a "material change" to the covenants, there must be "consent of fifty-one percent (51%) of the holders of a recorded first mortgage." *Id.* The bylaws further specified that an amendment to change the leasing of a residence would be considered material. *Id.* Here, neither the bylaws nor the covenants have a similar restriction. Instead, the covenants permit the board of directors to "establish reasonable rules and regulations concerning the use of Lots [and] dwellings."

¶34. The minimum lease term established by the bylaws is a "reasonable rule [or] regulation concerning the use of Lots [and] dwellings," and it does not contradict any rights reserved by the property owners in the covenants. I would therefore conclude that the October 2018 amendments to the bylaws were valid and did not amount to a constructive amendment of the covenants. I respectfully dissent on this point.

**GRIFFIS, J., JOINS THIS OPINION.**