ISHEE, J.,
for the Court.
¶ 1. On May 16, 2006, Barbara Williams and Julius Williams II were granted a divorce in the Harrison County Chancery Court on the ground of irreconcilable differences after thirty-two years of marriage. The judgment of divorce incorporated a property settlement agreement, which had been signed by both parties. The agreement contained a provision entitled “Survivor Benefit for Wife,” for which Barbara filed a motion to clarify judgment and/or for modification and other relief. A hearing was held on the merits of Barbara’s motion. The chancellor found that Barbara was entitled to receive survivor benefits, and he ordered the entry of a Qualified Domestic Relations Order (“QDRO”). The chancellor also ordered Julius to pay $1,647 for Barbara’s attorney’s fees and court costs plus interest. Julius timely filed this appeal, asserting that the chancery court’s ruling was actually a modification, not a clarification, of the property settlement agreement, and that the chancellor erred in granting Barbara survivor benefits with regard to Julius’s military pension and in granting Barbara attorney’s fees. Finding that the chancellor erred in interpreting the property settlement agreement to include Julius’s military survivor benefits, we must reverse.
FACTS AND PROCEDURAL HISTORY
¶ 2. Barbara and Julius were married on February 24, 1974. The divorce proceedings commenced in August 2002, and the parties finally entered into a stipulation of divorce on March 29, 2006, stipulating to irreconcilable differences as the ground for divorce. A property settlement agreement, which had been executed by the parties, was incorporated into the judgment of divorce that was entered on May *1199 16, 2006. On May 30, 2006, Julius remarried.
¶ 3. On November 14, 2006, Barbara filed a motion to clarify judgment and/or for modification and other relief regarding the “Survivor Benefit for Wife” provision of the property settlement agreement. The provision reads as follows:
It is the agreement and contract of the parties that the Wife is to have all survivors’ benefits otherwise accorded to her by law including, but not limited to, fifty-five percent (55%) of Husband’s survivor annuity, upon his death[,]from Civil Service Retirement System. A QDRO will be entered allowing Wife 50% of Husband’s Military Retirement based upon Husband’s years of military service during this marriage. A QDRO will be entered allowing Wife 55% of Husband’s Survivor Annuity upon his death from Civil Service Retirement System.
¶ 4. A hearing was held on June 27, 2007, and the chancellor ordered, in part, that Julius: (1) pay $1,647 plus interest to cover Barbara’s attorney’s fees and court costs, (2) “do any and all things necessary for ... [Barbara] to receive survivor’s benefits and for the entry of the Qualified Domestic Relations Order,” and' (3) “execute any and all documents needed for the United States Military to determine the number of retirement points that [have] accumulated during the time frame that he was in the military and married to [Barbara] ... the same being required for a determination of the amount of retired pay to which [Barbara] is entitled.” The chancellor also awarded Barbara fifty percent of Julius’s retirement pay, and he ordered that the QDRO be entered nunc pro tunc to May 16, 2006.
¶ 5. At the time of the divorce, Julius was in the military reserves and employed in a civil service position. He retired the following year on May 19, 2007. He does not dispute that Barbara is entitled to fifty percent of his military retirement, nor does he dispute that she is entitled to fifty-five percent of his survivor annuity from the Civil Service Retirement System. The parties disagree, however, over whether the property settlement agreement required Julius to pay fifty percent of his military survivor benefit plan to Barbara.
STANDARD OF REVIEW
¶ 6. This Court is limited when reviewing a chancellor’s decision on appeal. Townsend v. Townsend, 859 So.2d 370, 371-72(¶ 7) (Miss.2003). The chancellor’s opinion will not be disturbed “when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id. (quoting McBride v. Jones, 803 So.2d 1168, 1169(¶ 7) (Miss.2002)).
DISCUSSION
I. Survivor Benefit Plan
¶ 7. Julius argues that the judgment entered by the chancellor on September 7, 2007, was not a clarification of the property settlement agreement, but it was instead a modification of that agreement. He contends that the military retirement plan for a surviving spouse, which is called the Survivor’s Benefit Plan (the Plan), allows only one person to be named as the beneficiary to receive the full survivor’s benefit, and that person may not be named until the time of retirement. At the time Julius retired, he was married to Wenoka Williams; therefore, he named Wenoka as his beneficiary under the Plan. Julius argues that the property settlement agreement did not award Barbara any benefits from the Plan and that making Barbara his beneficiary would “strip Julius of his *1200 vested right to provide security for [Weno-ka].”
¶ 8. Mississippi law favors settling disputes by agreements. In re Dissolution of the Marriage of De St. Germain, 977 So.2d 412, 420(¶ 23) (Miss.Ct.App.2008). Absent fraud or overreaching, parties are afforded wide latitude in entering property settlement agreements. Steiner v. Steiner, 788 So.2d 771, 776(¶ 17) (Miss.2001). “Property settlement agreements are contractual obligations.” West v. West, 891 So.2d 203, 210(¶ 13) (Miss.2004) (citation omitted). “When the parties have reached [an] agreement and the chancery court has approved it, [the appellate court] ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.” Id. at 211(¶ 15) (citation omitted).
¶ 9. “[P]eople are free to enter into property settlement agreements— even unfavorable ones. We will not disturb such agreements simply because an agreement is not necessarily in one’s best interest.” De St. Germain, 977 So.2d at 420(¶ 23). The fact that a spouse “might have made a bad deal does not relieve him of his duty to live up to his end of the bargain.” Steiner, 788 So.2d at 776(¶ 17).
¶ 10. Julius argues that this issue is one of contract interpretation. Courts are obligated to enforce a contract that is executed by legally competent parties containing clear and unambiguous terms, and parties are bound by its provisions. Ivison v. Ivison, 762 So.2d 329, 335(¶ 16) (Miss.2000). “The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law.” Id. This Court “is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.” Id. at (¶ 17). The meaning of a contract is determined using an objective standard, rather than taking into consideration a subjective intent or a party’s belief that may conflict therewith. Palmere v. Curtis, 789 So.2d 126, 131(¶ 10) (Miss.Ct.App.2001) (citation omitted). The supreme court has established the following process for contract interpretation:
We have delineated a three-tiered process for contract interpretation. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 351 (Miss.1990). First, we look to the “four corners” of the agreement and review the actual language the parties used in their agreement. Id. at 352. When the language of the contract is clear or unambiguous, we must effectuate the parties’ intent. Id. However, if the language of the contract is not so clear, we will, if possible, “harmonize the provisions in accord with the parties’ apparent intent.” Id. Next, if the parties’ intent remains uncertain, we may discretionarily employ canons of contract construction. Id. at 352-53 (citing numerous cases delineating various canons of contract construction employed in Mississippi). Finally, we may also consider parol or extrinsic evidence if necessary. Id. at 353.
West, 891 So.2d at 210-11(¶ 14).
¶ 11. In the present case, the contract at issue is the property settlement agreement that was voluntarily entered into by the parties. The specific provision of the agreement at issue is the clause titled “Survivor Benefit for Wife,” which states that Barbara “is to have all survivors’ benefits otherwise accorded to her by law including, but not limited to fifty-five percent (55%) of Husband’s survivor annuity, upon his death from Civil Service Retirement.” (Emphasis added). It further provides that Barbara is entitled to fifty *1201 percent of Julius’s military retirement based upon the number of years he served during the marriage. However, it does not specifically state that Barbara is entitled to receive any amount of Julius’s military survivor benefits. As such, the issue becomes whether Julius’s military survivor benefits under the Plan were accorded to Barbara “by law.”
¶ 12. Julius argues that the listed survivor benefits do not include those provided under the Plan. He cites In re Marriage of Smith, 148 Cal.App.4th 1115, 56 Cal.Rptr.3d 341 (2007), for a useful description of the military’s Survivor Benefit Plan. The description from Smith reads as follows:
The military retirement scheme does not include a death benefit but military retirees may participate in the [Survivor Benefit Plan] (10 U.S.C. §§ 1447-1455), which provides benefits in the form of an annuity payable to a designated beneficiary upon the death of the retiree[.] (10 U.S.C. § 1450(a)). The cost of participation is withheld from the member’s monthly retirement pay. (10 U.S.C. § 1452).... An eligible participant may elect to name a former spouse as the [Survivor Benefit Plan] beneficiary. (10 U.S.C. § 1448(b)(2), (3)). And federal law allows state courts to order military service members to participate in the [Survivor Benefit Plan] and to designate a former spouse as beneficiary as part of a dissolution agreement. (10 U.S.C. § 1450(f)(4)).
Id. at 348.
¶ 13. Under 10 U.S.C. section 1450(f)(4) (2006), “[a] court order may require a person to elect (or to enter into an agreement to elect) under section 1448(b) of this title [10 U.S.C. § 1448(b) ] to provide an annuity to a former spouse (or to both a former spouse and child).” However, in the absence of a court order, 10 U.S.C. section 1448(b)(2) (2006) also allows an individual who becomes eligible to participate in the Plan to elect coverage for a former spouse instead of a current spouse or child.
¶ 14. In ruling on Barbara’s motion for clarification, the chancellor stated, “So it says she gets the survivor benefits of all of his retirement. And it says that she gets [fifty-five] percent of the Civil Service.” The chancellor further noted that under the Plan, Barbara was not entitled to any proceeds without them being accessed. According to the chancellor’s interpretation, “[i]t must be accessed in order for her to be able to get that which she should be entitled to as a retirement benefit under the Mississippi law.” According to the property settlement agreement, Barbara was to receive all survivor benefits accorded to her by law. Based on the language of the property settlement agreement and the provisions of the Plan, we are not convinced that Barbara was entitled to Julius’s military survivor benefits “by law.”
¶ 15. Upon Julius’s retirement from the military, he had the option of whether to elect to participate in the Plan. With his current wife’s consent, Julius could elect not to participate in the Plan, and no payments would be taken from his retirement to pay for enrollment in the Plan. He also had the option of naming a former spouse as a beneficiary in place of his current spouse. Section 1448(a)(1)(A) provides that persons eligible to participate in the Plan are persons who are entitled to retired pay. 10 U.S.C. § 1448(a)(1)(A) (2006). At the time of Julius’s agreement to the property settlement and subsequent divorce from Barbara, he was not entitled to participate in the Plan. According to Julius, he had not named any beneficiaries; therefore, Barbara was not entitled “by law” to his military survivor benefits. Under section 1448(b)(2)(A), upon becoming eligible to participate in the Plan, Julius *1202 could have elected to provide former-spouse coverage instead of providing coverage to his current spouse. As evidenced by the existence of the present appeal, Julius did not want to elect former-spouse coverage. However, the fact that he had the option of choosing beneficiaries, in addition to the option of whether to participate in the plan at all, indicates that Barbara was not entitled to these survivor benefits “by law.”
¶ 16. Under the clear and unambiguous terms of the property settlement agreement, Barbara was entitled to all survivor benefits accorded to her by law. A non-exhaustive list of those benefits included fifty-five percent of Julius’s civil service survivor annuity. In the next sentence, fifty percent of Julius’s military retirement was granted to Barbara. No mention was made of Julius’s military survivor benefits. Barring any specific provision awarding military survivor benefits to Barbara, whether the parties intended her to receive those benefits hinges on whether she was entitled to those benefits “by law,” according to the parties’ contractual agreement. Under the terms of the Plan, it is clear that military survivor benefits are not accorded to Barbara “by law.” The Plan is an optional plan for which an eligible participant must deduct payments from his retirement income. Furthermore, the Plan’s default beneficiaries are the eligible participant’s wife and child at the time of retirement; however, the participant may select certain parties as optional beneficiaries under the Plan.
¶ 17. We are not concerned with Julius’s argument that the chancellor’s judgment infringes on his interest in providing for Wenoka. He and Barbara voluntarily entered into a property settlement agreement, which is a contractual obligation. We are solely concerned with the specific terms of that agreement. In the property settlement agreement, Julius and Barbara could have provided that Julius would participate in the Plan and that he would name Barbara as a beneficiary under the Plan as a former spouse. However, they did not. They included specific provisions distributing Julius’s military retirement and his survivor annuity from the Civil Service Retirement System, but they made no mention of any potential benefits under the Plan.
¶ 18. After reading the property settlement agreement, we find that the provision awarding survivor benefits was clear. We find that the chancellor was manifestly in error in interpreting the provision to award Julius’s military survivor benefits to Barbara as they were not specifically mentioned in the property settlement agreement and were not accorded to her “by law.” Therefore, we reverse the judgment of the chancery court and render judgment finding that under the clear terms of the property settlement agreement, Barbara is not entitled to receive survivor benefits from the Plan.
II. Attorney’s Fees
¶ 19. Julius also complains that the chancellor erred in awarding Barbara attorney’s fees. The basis of his complaint rests on his assertion that “research has revealed no cases wherein a litigant who has been completely unsuccessful in obtaining any requested relief has been awarded attorney’s fees by Mississippi courts.” Generally, the award of attorney’s fees in a divorce case is left to the chancellor’s discretion. Chesney v. Chesney, 849 So.2d 860, 862(¶ 9) (Miss.2002). A reviewing court will not disturb a chancellor’s decision regarding attorney’s fees absent an abuse of discretion or manifest error. Id.
¶ 20. In addition to the issue of military survivor benefits, Barbara’s motion for clarification was well taken by the chancel *1203 lor on a number of other issues. Therefore, while we render judgment regarding the military survivor benefits, we remand the case to the chancellor to determine whether the amount of attorney’s fees remains appropriate in light of the present judgment in favor of Julius.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, P.J., BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. MYERS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND JOINED IN PART BY IRVING AND GRIFFIS, JJ.