GRIFFIS, P.J.,
for the Court:
¶ 1. In this breach-of-contract case, Chapel Hill LLC and Pearlington Dirt LLC appeal the grant of summary judgment in favor of SoilTech Consultants Inc. Chapel Hill and Pearlington argue that there were genuine issues of material fact in dispute, and summary judgment was not proper as a matter of law. We find no error and affirm.
FACTS
¶2. Chapel Hill contracted with the United States Army Corp of Engineers (USACE) to supply earthen materials for the repair of the Mississippi River levee in Orleans Parish, Louisiana. On December 29, 2009, SoilTech contracted with Chapel Hill and Pearlington to provide soil tests. Pearlington unconditionally guaranteed all of Chapel Hill’s obligations.
¶ 3. On July 21, 2010, the USACE partially terminated its contract with Chapel Hill out of convenience and not based on any fault.
¶ 4. On October 28, 2011, SoilTech filed a complaint against Chapel Hill and Pear-lington. SoilTech alleged that Chapel Hill and Pearlington were in breach of contract for their failure to pay $278,488.33. Chapel Hill and Pearlington filed a responsive pleading.
¶ 5. On February 17, 2012, SoilTech filed its motion for summary judgment. On April 24, 2012, after a hearing not included in the record, the circuit court granted SoilTech’s motion for summary judgment and awarded a total amount of $314,134.83, which included attorney’s fees and interest.
¶ 6. On May 2, 2012, Chapel Hill and Pearlington filed a motion to reconsider/set aside the judgment or, in the alternative, a motion for a new trial, under Mississippi Rule of Civil Procedure 59 (the *1099 “motion to reconsider”). After a hearing, the circuit court denied the motion. Chapel Hill and Pearlington filed their notice of appeal, and the case has been deflected to this Court.
ANALYSIS
¶ 7. Chapel Hill and Pearlington’s notice of appeal states that they appeal the April 24, 2012 judgment granting SoilTech’s motion for summary judgment and the June 25, 2012 order denying Chapel Hill and Pearlington’s motion to reconsider. The motion to reconsider does not have any effect on this appeal.
¶8. The motion to reconsider simply states that the grant of the summary judgment was “against the overwhelming weight of the evidence and ... should be set aside.” The motion does not provide any reason why a new trial should be granted (Rule 59(a)) or any reason to alter or amend the judgment (Rule 59(e)). Further, the brief filed by Chapel Hill and Pearlington does not provide any argument as to why it was error for the circuit court to deny the motion to reconsider. Instead, the real issue is whether it was proper to grant SoilTech a summary judgment.
¶ 9. Our standard of review for a grant of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. McMillan v. Rodriguez, 823 So.2d 1173, 1176 (¶ 9) (Miss.2002).
This Court employs a de novo standard of review ... and examines all the evi-dentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should ... be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says ... the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt.
Id. (citation omitted).
¶ 10. “Questions concerning construction of contracts are questions of law.” Henry v. Moore, 9 So.3d 1146, 1152 (¶ 15) (Miss.Ct.App.2008) (citing Parkerson v. Smith, 817 So.2d 529, 532 (¶7) (Miss.2002)). Contract interpretation is a three-step process:
First, we look to the “four corners” of the agreement and review the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, we must effectuate the parties’ intent. However, if the language of the contract is not so clear, we will, if possible, harmonize the provisions in accord with the parties’ apparent intent. Next, if the parties’ intent remains uncertain, we may discre-tionarily employ canons of contract construction. Finally, we may also consider parol or extrinsic evidence if necessary.
Williams v. Williams, 37 So.3d 1196, 1200 (¶ 10) (Miss.Ct.App.2009) (citations and quotations omitted); see also Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss.1990). When a contract is clear and unambiguous, this Court is not “concerned with what the parties may have meant or intended but rather with what they said, for the language employed in a contract is the surest guide to what was intended.” *1100 Shaw v. Burchfield, 481 So.2d 247, 252 (Miss.1985).
¶ 11. Chapel Hill had a federal contract with the USACE to supply earthen materials for the repair of a levee in Louisiana. The contract provided that the government has the unilateral right to terminate the contract for convenience. On July 21, 2010, the government exercised its contractual right and terminated Chapel Hill’s contract.
¶ 12. SoilTech contracted with Chapel Hill and Pearlington to provide soil tests under Chapel Hill’s government contract. SoilTech was provided a copy of the contract between Chapel Hill and the USACE. Chapel Hill and Pearlington argue that SoilTech entered a written contract that required SoilTech to perform soil tests as part of Chapel Hill’s contract with the USACE. Because the USACE terminated its contract, the contract volumes were reduced by approximately seventy percent, which reduced the amount Chapel Hill and Pearlington would owe SoilTech. Chapel Hill and Pearlington also claim that this dispute in the amount that may be due and owing creates a genuine issue of a material fact such that summary judgment is not appropriate.
¶ 13. Chapel Hill and Pearlington assert that the plain meaning of the contract precludes summary judgment. They cite two paragraphs.
¶ 14. First, Chapel Hill argues that under paragraph 7 of its contract with Soil-Tech, they were required to negotiate a price reduction as a result of a volume reduction. Paragraph 7 states:
Changes. [Chapel Hill] reserves the right by written change order or amendment to make changes in requirements, amount of work, or engineering time schedule adjustments; and [SoilTech] and [Chapel Hill] shall negotiate appropriate adjustments in fee and/or schedule acceptable to both parties to accommodate any changes.
(Emphasis added). SoilTech responds that Chapel Hill never requested a change order in writing, so under the contract’s terms, there was no requirement to negotiate a fee adjustment.
¶ 15. Second, Chapel Hill argues that because the government terminated the contract, such governmental action resulted in termination under paragraph 22. Paragraph 22 states:
Force Majeure. Neither [Chapel Hill] nor [SoilTech] shall be liable for any fault or delay caused by any contingency beyond their control, including, but not limited to, acts of God, wars, strikes, walkouts, fires, natural calamities, or demands or requirements of governmental agencies.
(Emphasis added). SoilTech responds that paragraph 22 is not applicable because it provides certain conditions under which neither Chapel Hill nor SoilTech “shall be liable for any fault or delay.” Thus, because SoilTech makes claims for services actually provided, there is not a claim for fault or delay. SoilTech only claims that Chapel Hill failed to pay its bill.
¶ 16. To support its motion for summary judgment, SoilTech filed an affidavit from J. Clark Robinson, its chief financial officer. Clark testified that “Chapel Hill and Pearlington jointly agreed to pay Soil-Tech for its services within thirty (30) days of the date SoilTech submitted an invoice for same.” Clark also stated that under the contract’s terms, payment to SoilTech was “not dependent on any factor except SoilTech’s ability to provide services in accordance with generally accepted standards.” Clark stated that SoilTech provided and billed for $437,518.50 worth of services, $159,030.17 was paid, and the bal- *1101 anee had not been paid despite demand. Clark stated that under the terms of the contract, nonpayment was a material breach of the contract.
¶ 17. Chapel Hill and Pearlington responded to the motion for summary judgment with an affidavit from Johnny Dollar, the managing member of Chapel Hill and Pearlington. Dollar testified that SoilTech “was requested to acknowledge a price adjustment per the cited clause.” Dollar also stated that “[biased on these facts, there is no breach of contract as there has yet to be a determination of whether or not any further monies are due and owing the plaintiff.”
¶ 18. In response, SoilTech filed the affidavit of Michael Volk, the president of SoilTech. Volk stated that Chapel Hill never requested SoilTech to stop the work or to negotiate a downward adjustment in price or quantity. Volk stated that even after the USACE partially terminated Chapel Hill’s contract, Chapel Hill requested SoilTech to continue the work and assured SoilTech that it would be paid for the work. Volk further testified that the only request for a downward adjustment was in an email that he received from Dollar over four months after SoilTech filed its complaint.
¶ 19. In a rebuttal affidavit, Dollar stated that on July 22, 2010, SoilTech was notified of the government’s reduction in volume. Dollar stated that he had verbally requested a price adjustment. Dollar also stated that SoilTech had not pursued its remedies available through the USACE.
¶ 20. SoilTech responded that the contract did not require SoilTech to pursue remedies through the USACE. The contract at issue contained no term that conditioned payment to SoilTech on payment by the USACE to Chapel Hill. The letter from the USACE to Chapel Hill that partially terminated the contract stated that Chapel Hill was to “[ijmmediately stop all work [and] terminate subcontracts....”
¶ 21. Chapel Hill did not produce any evidence to rebut SoilTech’s statement that Chapel Hill asked SoilTech to continue to work. The affidavits filed do not indicate that there is a genuine issue in dispute over this issue. There is no evidence that Chapel Hill asked SoilTech to stop the work after the government terminated its contract with Chapel Hill. Regardless of the fact that the government told Chapel Hill to “terminate subcontracts,” an email in July 2010 from Chapel Hill to SoilTech stated that Chapel Hill was trying to “get a better understanding of’ what the termination meant. A letter from Chapel Hill to SoilTech in August 2010 stated that Chapel Hill was “awaiting detailed instructions from the [gjovernment.”
¶ 22. Chapel Hill has not offered any evidence that it ever questioned or complained about any invoices during the time of performance. The contract was not a “pay if paid” contract. The contract’s language is unambiguous that Chapel Hill’s obligation to pay SoilTech was not conditioned on Chapel Hill being paid by the USACE nor any other factor except Soil-Tech’s actual performance of the work. There is no dispute about whether Soil-Tech did the amount of work that was billed.
¶ 23. The plain language of the contract clearly established that Chapel Hill had a contract where it agreed to pay SoilTech for its services, conditioned on nothing but SoilTech’s ability to provide the services. Paragraph 21 of the contract, in pertinent part, states:
Payment for [SoilTechj’s services is not contingent on any factor except [Soil-Techj’s ability to provide services in a *1102 manner consistent with that standard of care and skill ordinarily exercised by members of the profession currently practicing in the same locality under similar conditions.... [SoilTech] shall be entitled to reasonable attorney’s feés....
¶ 24. There is no dispute that SoilTech performed the work as required under the contract, Chapel Hill did not pay what it owed and thus breached the contract. There was not a genuine issue of material fact as to the validity of the contract, the breach, or how much outstanding money Chapel Hill and Pearlington owed.
¶ 25. Dollar’s affidavit does not state specifically whether an adjustment was requested while work was in progress or any other pertinent specifics. Conclu-sory, self-serving affidavits are not a basis to avoid summary judgment. Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay, 42 So.3d 474, 487 (¶ 35) (Miss.2010) (citation omitted).
¶ 26. Therefore, as to SoilTech’s breach-of-contract claim, there were no triable; genuine issues of material fact, and the circuit court correctly granted summary judgment. We find no error and affirm.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.