# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01922-COA

**CYPRESS SPRINGS LLC** APPELLANT

v.

**CHARLES DONALD PULPWOOD INC.** APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2013 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER SOLOP |
| ATTORNEYS FOR APPELLEE: | WILLIAM C. REEVES |
| | DONALD ALAN WINDHAM |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED IN FAVOR OF APPELLEE |
| DISPOSITION: | REVERSED AND REMANDED: 02/03/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Cypress Springs Inc. filed a complaint against Charles Donald Pulpwood Inc. (CDPI) for breach of contract relating to a timber-sale agreement. Cypress Springs alleged CDPI breached its contract when it: (1) failed to cut all timber specified in the agreement, and (2) failed to remove all debris and restore all roads used on the property. The trial court granted CDPI's motion for summary judgment, which Cypress Springs appeals. We reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

¶2.     Cypress Springs and CDPI entered into a timber-sale agreement on October 20, 2008.

The contract, in relevant part, read:

> All timber to be cut as follows: All American sycamore that have the minium
> [sic] specifications to make palletwood size; (minimum 16 foot length, 10 inch
> tip, small end diameter)
>
> . . . .
>
> The rates to be paid are as follows:
> $36.00/ton for hardwood palletwood . . . (minimum 16 foot length, 10 inch tip,
> small end)
>  $4.00/ton for hardwood pulpwood[.]

The contract further stipulated:

> By his acceptance of this timber conveyance, the buyer binds himself and
> agrees to do the following: . . .
>
> > Restore logging and access roads and trails, as near as possible,
> > to the conditions in which they were prior to logging.  This
> > includes leaving roads with proper drainage;
> >
> > . . . .
> >
> > Remove any and all tops, limbs[,] and other logging debris from
> > fields, creeks[,] and other open areas[.]

The parties also agreed the terms of the contract expired at midnight on October 31, 2009.

¶3.     CDPI commenced logging operations on the Cypress Springs property sometime in

2009.  CDPI cut approximately half of the sycamore trees by the fall of 2009.  At that time,

CDPI either left voluntarily due to increased ground water, which made logging impossible,

or a representative from Cypress Springs asked CDPI to vacate the land.  Nonetheless, CDPI

ended its logging operations prior to the October 31, 2009 contract-expiration date.

2

¶4.     Cypress Springs hired a different contractor to finish the logging operation.  Cypress Springs claims it paid a higher price for the removal of the remaining sycamore trees than it would have paid if CDPI had logged all of the sycamore trees under the contract.  Further, Cypress Springs argues that CDPI failed to remove all debris and restore the logging roads before ending its operation.  As a result, Cypress Springs filed this lawsuit against CDPI for breach of contract.

¶5.     Thereafter, CDPI filed a motion for summary judgment. The motion disputed the alleged breaches and argued that the contract allowed CDPI discretion in the number of trees it could harvest.  Cypress Springs countered that the contract provided that CDPI remove all of the timber that met the specifications outlined in the contract.

¶6.     Additionally, CDPI claimed Cypress Springs prevented it from restoring the area to its pre-logging condition as required by the contract because Cypress Springs changed the locks to the entrance gates shortly after CDPI left the area.  Cypress Springs asserted it afforded CDPI the opportunity to return to clean the remaining debris and restore the logging roads, but CDPI failed to make further arrangements.

¶7.     The trial court granted CDPI's motion for summary judgment.  It is from this judgment that Cypress Springs now appeals.

STANDARD OF REVIEW

¶8.     "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been

3

made." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Further, "'[q]uestions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact[-]finder.' We, as an appellate court, employ the de novo standard of review for questions of law." *Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1231 (¶8) (Miss. 2009) (quoting *Facilities Inc. v. Rogers-Usry Chevrolet Inc.*, 908 So. 2d 107, 110 (¶5) (Miss. 2005)).

ANALYSIS

¶9. Cypress Springs argues on appeal that the trial court improperly granted CDPI's motion for summary judgment because the trial court erroneously considered extrinsic evidence in its interpretation of the contract, and the unambiguous contract terms favored Cypress Springs's interpretation rather than CDPI's. In the alternative, Cypress Springs argues that any question of a breach by CDPI was a factual issue reserved for a jury trial, not a question of law for summary judgment.

> I. *Whether any ambiguity in the contract exists to warrant a reversal of the trial court's grant of summary judgment.*

¶10. The interpretation of a contract requires that a court employ a three-part analysis:

> First, [the court] look[s] to the "four corners" of the agreement and review[s] the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, [the court] must effectuate the parties' intent. However, if the language of the contract is not so clear, [the court] will, if possible, harmonize the provisions in accord with the parties' apparent intent. Next, if the parties' intent remains uncertain, [the court] may discretionarily employ canons of contract construction. Finally, [the court] may also consider parol or extrinsic evidence if necessary.

*Chapel Hill LLC v. SoilTech Consultants Inc.*, 112 So. 3d 1097, 1099 (¶10) (Miss. Ct. App. 2013) (quoting *Williams v. Williams*, 37 So. 3d 1196, 1200 (¶10) (Miss. Ct. App. 2009)).

¶11.    In *Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (¶20) (Miss. 2012), the supreme court held:

> In a summary judgment case, the reviewing Court need not go through the entire three-step analysis; the Court should determine only whether the contract is ambiguous. Questions of contract construction and ambiguity are "questions of law that are committed to the court rather than questions of fact committed to the fact[-]finder." If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate.

(Internal citations omitted).

¶12.    Thus, a trial court may grant summary judgment on a contractual issue only if no genuine issue of material fact arises, and no ambiguity exists in the contract. *Id.* Hence, based on our de novo review, if this Court finds no ambiguity in the contract, then the trial court's grant of summary judgment stands. However, if this Court finds the contract to be ambiguous, then we must also determine that the summary judgment is inappropriate, as "[c]ontractual ambiguities are questions to be determined by the trier of fact." *Id.* at 18 (¶22) (citing *Royer Homes*, 857 So. 2d 748, 752 (¶8) (Miss. 2003); *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 354 (Miss. 1990)).

¶13.    "An ambiguity is defined as a susceptibility to two reasonable interpretations." *Dalton*, 20 So. 3d at 1232 (¶10) (quoting *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 811-12 (5th Cir. 1997)). The *Dalton* court elaborated:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Id.* (citation omitted). Thus, this Court must determine if one could objectively view the contract and find more than one reasonable interpretation.

¶14. Cypress Springs offers an interpretation that the contract required CDPI to cut all American sycamore trees that met the specifications outlined in the contract. CDPI offers an interpretation that the contract allowed CDPI discretion as to the number of trees to cut.

¶15. "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Epperson*, 93 So. 3d at 16-17 (¶18) (quoting *Delta Pride Catfish Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997)).

¶16. The contractual provision that states "[a]ll timber to be cut as follows: [a]ll American sycamore" seems to indicate that "all" of the American sycamore trees that meet certain specifications must be cut. However, we must read the contract as a whole to determine the presence of any ambiguous terms. "Particular words should not control; rather, the entire instrument should be examined." *Pursue Energy Corp.*, 558 So. 2d at 352. After examining the entirety of the contract, we can see that one could reasonably read the contract to contain different meanings regarding the amount of timber to be cut. The contract could also be interpreted to mean Cypress Springs leased all of the property to CDPI, which allowed CDPI to decide how much, if any, of the specified American sycamore timber to harvest.

6

¶17. After looking at the four corners of the agreement and reviewing the actual language the parties used in their agreement, we find that the language is not so clear or unambiguous as to allow this Court to effectuate the parties' intent. *See Chapel Hill LLC*, 112 So. 3d at 1099 (¶10). We also find that the language of the contract is not so clear as to allow this Court to harmonize the provisions in accord with the parties' apparent intent. *See id.* As a result, we find it is necessary for the trial court to employ canons of contract construction and consider parol or extrinsic evidence if necessary. *See id.*

¶18. We reverse the summary judgment and remand for further proceedings.

> II. *Whether summary judgment was appropriate on the issue of breach of the debris-removal and road-restoration clauses.*

¶19. Cypress Springs further alleges CDPI breached the contract when it failed to restore the land and roads to pre-logging conditions. While it is undisputed that Cypress Springs changed the locks to the access gates shortly after CDPI vacated the premises, the parties disagree on whether this act by Cypress Springs excused CDPI from its performance of this portion of the contract. Despite this disagreement, the trial court found Cypress Springs failed to assert specific facts that would create a genuine issue of material fact for trial.

¶20. On a motion for summary judgment, "[t]he evidence is viewed in the light most favorable to the party opposing the motion." *Abrams v. Republic Fin. LLC*, 146 So. 3d 1030, 1031 (¶3) (Miss. Ct. App. 2014) (quoting *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004)). Yet, "[t]o survive summary judgment, the opposing party may not rely on mere allegations but must set forth specific facts to show genuine issues for trial." *Cade v. Beard*,

7

130 So. 3d 77, 81 (¶11) (Miss. 2014) (citing *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 914 (¶9) (Miss. 2011)).

¶21. This question of whether Cypress Springs prevented CDPI from performing under the contract constitutes a triable issue of material fact that renders summary judgment inappropriate. "To survive summary judgment, it is not enough that disputed facts exist — such facts must also be material." *Bradley v. Kelley Bros. Contractors Inc.*, 117 So. 3d 331, 338 (¶27) (Miss. Ct. App. 2013) (citing *Citifinancial Retail Servs. v. Hooks*, 922 So. 2d 775, 779 (¶18) (Miss. 2006)). Further, "[a] 'material fact' is 'one that matters in an outcome determinative sense[.]'" *Id.*

¶22. Cypress Springs testified through deposition testimony that CDPI left the property without notice, and failed to arrange a return to the property for clean-up efforts after Cypress Springs attempted to allow CDPI back onto the property. CDPI counters that Cypress Springs removed it from the property, and did not make any attempts to contact CDPI after that time.

¶23. CDPI contended Cypress Springs prevented it from complying with the contractual requirements of debris removal and road restoration when Cypress Springs changed the locks to the entry gate on the property. If a party prevents performance of the contract by another party, then the party preventing performance cannot claim a breach of contract, but is in fact breaching the contract. *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 62 (¶32) (Miss. Ct. App. 2011). However, if Cypress Springs provided an opportunity for CDPI to return to the land

8

to fulfill its contractual obligations, then a failure by CDPI to use the opportunity may result in a breach. Therefore, a resolution of these facts determines whether CDPI or Cypress Springs first breached the contract or if a breach occurred at all.

¶24. Accordingly, we find that this issue survives summary judgment and presents a triable issue. Therefore, we reverse the summary judgment and remand for further proceedings.

¶25. **THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.**