WILSON, J.,
for the Court:
¶ 1. The circuit court granted the motion to compel. arbitration filed by. defendants Kip Allen and Allen Utilities LLC (AU),[1] finding that Allen and AU are third-party beneficiaries of two subcontracts, which contain arbitration provisions, between plaintiff Garrett Enterprises Consolidated Inc. (Garrett) and Hensley R. Lee Contracting Inc. (Lee). However, the subcontracts’ arbitration provisions are expressly limited to claims “between the Contractor [i.e., Lee] and the Subcontractor [i.e., Garrett],” nothing in the subcontracts grants Allen or AU any enforceable rights,, and, in fact, both .subcontracts specifically pre- *802 elude recognition of third-party beneficiaries. Accordingly, Allen and AU have no right to compel arbitration under the subcontracts. We therefore reverse and remand the case to the circuit court for further proceedings.
FACTS AND PROCEDURAL HISTORY
¶2. The relevant facts for purposes of this appeal are those alleged by Garrett in its amended complaint. In 2011, Garrett hired Allen as a salaried employee to be the manager of its construction division. In connection with Allen’s hiring, Garrett agreed to hire the employees of Allen’s limited liability company (AU) and to purchase AU’s assets for specified consideration, including the assumption of certain liabilities. Garrett also agreed to acquire ownership of AU itself through future payments based on AU’s estimated goodwill value. Garrett alleges that as part of Allen’s hiring it also agreed to “assume responsibility” for three subcontracts between AU and Lee, which related to utility construction contracts that Lee had with the City of Madison, the Town of Edwards, and the City of Calhoun City. Lee subsequently assented to Garrett’s taking over the work on these subcontracts. Finally, Garrett alleges that it later entered into another subcontract with Lee for a project in Minot, North Dakota, and that Lee “insisted] ... that Allen be the project manager for the ... subcontract work at that location.”
¶ 3. Although Garrett’s amended complaint asserts that “Allen entered into an employment contract with” Garrett, it is unclear whether there was ever any written contract concerning either Allen’s employment or AU’s sale. If such documents exist, they are not in the record. Also, no contracts related to the Calhoun City or Minot subcontracts are part of the record. The only agreements made a part of the record are the subcontracts between Garrett and Lee for the Madison and Edwards projects. The provisions of those two subcontracts that are relevant to this appeal are described below and are identical.
¶ 4. Garrett alleges that at some point after Allen was hired, he began working with Lee to shift costs of the various projects from Lee to Garrett so as to benefit Lee and harm Garrett. Garrett also alleges that although it was paying Allen’s full salary, Allen effectively served as the project manager for Lee’s entire Minot project, not just the work subcontracted to Garrett, which also benefitted Lee and harmed Garrett. Garrett alleges that in January 2012, Allen abruptly resigned his position at Garrett and went to work for Lee. Garrett alleges that after Allen resigned, it discovered substantial undisclosed federal tax liens and commercial liens on the AU assets that it had purchased from him.
¶ 5. Garrett’s amended complaint asserted a number of claims against Allen, AU, and Lee. Garrett asserted claims against Allen for breach of his employment contract with Garrett and breach of his fiduciary duty as an employee. Garrett asserted a claim against Allen and AU for breach of an alleged “contractual agreement” to reimburse Garrett for expenses related to the Calhoun City project. Garrett asserted a claim against Lee for breach of the Madison and Edwards subcontracts, including for nonpayment of amounts owed under one or both contracts. Garrett also asserted a tortious interference claim against Lee. Finally, Garrett asserted additional claims against all defendants, generally alleging that they conspired or schemed to defraud and otherwise harm Garrett.
¶ 6. In response to the complaint, Lee moved to compel arbitration pursuant to *803 arbitration provisions in the Madison and Edwards subcontracts, and Allen and AU moved to compel arbitration as purported third-party beneficiaries of the same subcontracts. Garrett later settled its claims against Lee and agreed to its dismissal with prejudice.[2] After Lee was dismissed, the circuit court granted Allen’s and AU’s motion to compel arbitration, finding that they were third-party beneficiaries of the Madison and Edwards subcontracts between Garrett and Lee. Garrett timely appealed.
ANALYSIS
¶ 7. We have jurisdiction of this appeal because the circuit court’s order directed “the entire controversy to be arbitrated.” Sawyers v. Herrin-Gear Chevrolet Co., 26 So.3d 1026, 1034 (¶ 19) (Miss. 2010). We review an order granting or denying a motion to compel arbitration de novo. Id. at (¶ 20); Adams, v. Greenpoint Credit LLC, 943 So.2d 703, 708 (¶15) (Miss.2006).
¶8. Three provisions common to the Madison and Edwards subcontracts are relevant to this appeal. First, the provision that Allen and AU say makes them ■third-party beneficiaries of ■ the subcontracts:
Section 17. Additional Responsibilities of Subcontractor.
The Subcontractor shall have Kip Allen as project manager over the Subcontract' Work and oversee the Subcontractor’s performance of the Subcontract work at all times.- Kip Allen’s continued service and performance in respect to the Subcontract Work is a material term of this Agreement. If the Subcontractor terminates •Kip Allen’s employment, or Kip Allen and the Subcontractor separate for any reason, or the.-Subcontractor at any time fails to ensure Kip Allen’s performance under this Agreement, or Kip Allen .ceases to perform under this Agreement, the Contractor shall have the right but not the obligation, at its own ■ election, to terminate this Agreement, and contract with another subcontractor or entity to complete the Subcontract Work.
Second, the arbitration provision:
Section 21. Arbitration; Disputes.
All claims; disputes, and other matters in controversy between the Contractor [i.e., Lee] and the Subcontractor [i.e., Garrett] arising out of or relating to this Agreement shall be decided by binding arbitration....
Third, the final clause of Section 10: “Nothing ... in this Agreement shall be construed to create any right for or to bestow any benefits upon-third parties.” Unhelpfully, neither Garrett nor Allen cited Section 10 in the circuit court or this Court. Nonetheless, we cannot ignore Section 10 because we “must” interpret the “contract as a whole,” not particular clauses in isolation.[3] And Section 10 is plainly relevant to the central issue of contract interpretation raised in this appeal, i.e., the fneaning of Section 17.
*804 ¶ 9. “Because arbitration is a matter of contract,” we “employ ordinary contract-construction principles to determine the intent of the parties.” Noble Real Estate, Inc. v. Seder, 101 So.3d 197, 202 (¶ 16) (Miss.Ct.App.2012) (citing B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 487 (¶ 8) (Miss.2005)). “[W]e look to the language the parties used in their contract,” and “ ‘read the contract as a whole, so as to give effect to all of its clauses.’ ” Id. (quoting One S., Inc. v. Hollowell, 963 So.2d 1156, 1162 (¶ 10), (Miss.2007)) (alteration omitted). Reading the Garrett-Lee subcontracts as a whole, we conclude that the arbitration provision does not cover the present dispute between Garrett and Allen and that Allen is not a third-party beneficiary of the subcontract. In Section C, below, we also reject alternative arguments ' that .Alien has raised on appeal.
A. Garrett’s claims against Allen/AU are not within the scope of the arbitration provision.
¶ 10. It is well-settled that “arbitration agreements can be enforced against non-signatories if such non-signatory is a third-party beneficiary.” Adams, 943 So.2d at 708 (¶ 15) (emphasis added). Here, however, those roles are reversed— the non-signatory, Allen, wants to enforce the arbitration agreement against the signatory, Garrett. We have held that in this scenario “the proper issue is not whether [the non-signatory] is a third-party beneficiary, but whether [the non-signatory] can compel arbitration against [the signatory] under the terms of the [arbitration] agreement.” Niolet v. Rice, 20 So.3d 31, 34 (¶10) (Miss.Ct.App.2009). In Niolet, we held that the plaintiffs supervisor (a non-signatory) was entitled-to compel arbitration "of the plaintiffs claims against him because the arbitration agreement between the plaintiff and her employer specifically covered “claims involving and/or against ... supervisors.”. Id. at 35 (¶ 12).
¶ 11. In this case, the arbitration provision in the subcontracts between Lee and Garrett is limited to “[a]ll claims, disputes, and other matters in controversy between the Contractor [i.e., Lee] and the Subcontractor [i.e., Garrett/” (emphasis added). Garrett’s claims against Allen and AU are not “between the Contractor and the Subcontractor.” They are between “the Subcontractor” and one of its former employees and his LLC. Thus, Allen and AU are not entitled to compel arbitration “under the terms of the agreement.” Niolet, 20 So.3d at 34 (¶ 10); cf. Andrews v. Ford, 990 So.2d 820, 825 (¶21) (Miss.Ct.App. 2008) (holding that although the estate of a former LLC member was bound by the LLC’s operating agreement, the agreement’s arbitration provision applied only to disputes “between the Members,” and the estate was not a “Member” and so could not be compelled to arbitrate). Because Garrett’s claims against Allen and AU are not within the scope of the arbitration provision, they would not be able to compel arbitration of those claims even if they could be deemed third-party beneficiaries of the subcontracts.
B. Allen and AU are not third-party beneficiaries of the subcontracts between Garrett and Lee.
¶ 12. Alternatively, we also conclude that Allen’s and AU’s motion to compel arbitration should have been denied because they are not third-party beneficiaries of either subcontract, read as a whole. Under Mississippi law, a party will be deemed "a third-party beneficiary only in the following circumstances:
[T]he contracts between the original parties must have been entered for [the third party’s] benefit, or,at least such benefit must be the direct result of the *805 performance within the contemplation of the parties ■ as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. The obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself
Adams, 943 So.2d at 708-09 (¶ 15) (quoting Burns v. Washington Savings, 251 Miss. 789, 796, 171 So.2d 322, 325 (1965)).
¶ 13. Allen and AU argue that they are third-party beneficiaries because Section 17 of the subcontracts requires Garrett to employ Allen as its project manager on the two subcontracts. However, Section 17 does not create “a legal obligation or duty ... to [Allen],” nor does it give Allen a “right ... to maintain an action.” Adams, 943 So.2d at 709 (¶ 15) (quoting Burns, 251 Miss. at 796, 171 So.2d at 325) (emphasis added). Rather, under the subcontracts, if Allen ceased to be the project manager, Lee had “the right but not the obligation,’ at its own election, to terminate [the subcontract], and contract with' another subcontractor or entity.” This provision gave only Lee — not Allen or AU — legally enforceable rights against Garrett. If Garrett had terminated Allen before full performance of the subcontracts, Lee had the option of consenting to a new project manager — and neither Allen nor AU would have had any right to object or bring an action under the subcontracts.[4] Under the subcontracts, Allen was only an incidental beneficiary to Garrett’s obligation to Lee— and even, then only to the extent that Lee exercised its option to require Garrett to fulfill that obligation.
, ¶ 14. Moreover, when we read each subcontract “as a whole” (see supra note 3), it becomes apparent that Allen and AU are, at best, “merely incidental beneficiaries and not third party beneficiaries within the intent, terms and meaning of the contract.” Burns, 251 Miss. at 798, 171 So.2d at 326. This is because Section 10 of the subcontracts states: “Nothing ... in this Agreement is intended to or shall be construed to create any rights for or to bestow any benefits upon third parties.” The contracting parties’ clear disclaimer of any intent to create third-party rights disposes of any claim that Section 17 grants such rights to Allen or AU. See, e.g., India. com, Inc. v. Dalal, 412 F.3d 315, 321-22 (2d Cir.2005) (holding that such a “negating clause” precludes recognition of third-party beneficiaries); McQueen Contracting, Inc. v. Fidelity & Deposit Co. of Md., 863 F.2d 1216, 1222-23 (5th Cir.1989) (applying Mississippi law and holding that a clause providing that “[n]o right of action shall accrue” to any third party “negates any inference” that the contract confers third-party beneficiary status), vacated in part but adhered to in relevant part on reh’g, 871 F.2d 32 (5th Cir.1989); Heber E. Costello, Inc. v. Edwards & Son, Inc., No. 2:96CV42-B-B, 1998 WL 94925, at *4 (N.D.Miss. Jan. 22, 1998) (applying Mississippi law and holding that a clause providing that nothing in the contract is intended to give rights or confer benefits on third parties is not “mere[ ] boilerplate” but effectively precludes third-party beneficiary status). Put simply, Allen argues that Section 17 means x, but in Section 10, the actual parties to the subcontract — Garrett and Lee — clearly and unambiguously agreed that “[njothing” in the entire subcontract “is intended to or shall.be con *806 strued to” mean x. Such an unambiguous statement must be accepted as the intent of the parties and enforced as written. Epperson, 93 So.3d at 16 (¶ 17).
C. Allen and AU identify no alternative basis for compelling arbitration.
¶ 15. On appeal, Allen and AU make two alternative arguments as to why the circuit court’s order compelling arbitration should be affirmed — that the Madison and Edwards subcontracts were but one part of a “global transaction” in which Allen and AU participated, and that they are entitled to arbitrate under the subcontracts because Lee moved to compel arbitration prior to its dismissal. For the reasons that follow, neither argument is persuasive.
1. AlIen’s/AU’s “global transaction” argument is unavailing because (a) Garrett’s claims against them are outside the scope of the only arbitration provision in any of the agreements and (b) the parties’ various agreements do not constitute a single “global transaction.”
¶ 16. On appeal, Allen also argues that he is entitled to compel arbitration under the reasoning of the plurality opinion in Sullivan v. Protex Weatherproofing, Inc., 913 So.2d 256, 259-61 (¶¶ 20-32) (Miss.2005), because the Madison and Edwards subcontracts between Garrett and Lee are part of the same “global transaction” as the separate agreements between Garrett and Allen/AU. We disagree. First, even if Allen were correct that all of these agreements were part of the same “global transaction,” Garrett’s claims against him are still beyond the scope of the terms of the only arbitration provision contained in any of the agreements. That is, as already discussed above, Garrett’s claims against Allen simply are not a dispute “between the Contractor and the Subcontractor.” See Andrews, 990 So.2d at 823-825 (14-21) (plaintiff alleging breach of contract was bound by the terms of another contract that was part of the same “integrated agreement,” but its arbitration provision applied only to disputes “between the Members,” and since the plaintiff was not a “Member,”' she still could not be compelled to arbitrate).
¶ 17. Moreover, Sullivan, supra, is readily distinguishable from the instant case. Sullivan involved only two relevant contracts — an asset purchase agreement in which Sullivan sold his business to a wholly owned subsidiary of ATX, and an employment contract between Sullivan and the subsidiary. Sullivan, 913 So.2d at 257 (¶¶ 3-4). The employment contract, to which ATX was not a party, had an arbitration provision. The asset purchase agreement, to which ATX was a party, did not include an arbitration provision. But the two contracts were executed at the same time, and the asset purchase agreement expressly incorporated the employment contract as an “integral part,” an appendix, and a condition precedent. See id. at 258, 260-61 (¶¶ 12, 27-31). On these facts, a four-justice plurality concluded that the two contracts were “integrated” and part of a single “global transaction,” and, therefore, ATX could compel arbitration of Sullivan’s claims alleging breach of the asset purchase agreement. Id. at 261 (¶¶ 32). A separate opinion, also joined by four justices, disagreed, finding that the two contracts addressed different issues and that even the clear interrelationship between them was insufficient to establish that the parties intended them to be treated a single, integrated agreement. See id. at 264-66 (¶¶ 50-56) (Randolph, J., concur *807 ring in part and dissenting part).[5]
¶ 18. Assuming that the Sullivan plurality opinion is controlling, its reasoning does not help Allen on the facts here. Other than the Madison and Edwards subcontracts, it is unclear when the other various agreements discussed in the complaint were executed, or if they were even reduced to writing. The record contains no agreements related to Allen’s employment, the sale of AU, or the Minot and Calhoun City subcontracts. Moreover, Sullivan merely “integrated” two expressly interrelated and simultaneously executed contracts between Sullivan on one side and a parent corporation and its wholly owned subsidiary on the other. Here, Allen would have us treat as one “global transaction” agreements between himself and Garrett on one hand, and agreements between Garrett and Lee on the other. While Sullivan might permit AU to enforce related contracts signed by Allen (or vice versa), it cannot be stretched to allow Allen and AU to enforce contracts to which neither of them is a party.
2. Lee’s filing of a motion to compel arbitration, which became moot once it was dismissed from the case, does not entitle Allen and AU to arbitrate.
¶ 19. Finally, Allen briefly argues on appeal that he is entitled to arbitrate because Lee moved to compel arbitration prior to being voluntarily dismissed with prejudice. In support of this argument, Allen cites the following language in the subcontracts’ arbitration provision:
If the Contractor [i.e., Lee] in good faith believes that any claim, dispute, or matter in controversy with the Subcontractor [i.e., Garrett] also involves rights or liabilities of the Owner, Engineer, or other third party, then, at the Contractor’s sole election, the Subcontractor agrees to resolve such issues in the same forum or proceeding, including arbitration, court, or administrative authority, which has jurisdiction over some or all claims, disputes, and matters in controversy involving the Owner, Engineer, or other third party so as to promote economy and avoid inconsistent results. If any dispute between the Contractor and the Subcontractor is subject to litigation pursuant to this provision, the Contractor and the Subcontractor waive their rights to a jury trial.
(Emphasis added).
¶ 20. We need not decide whether, as Allen now argues, this provision would have granted Lee a right to bring Allen and AU into an arbitration proceeding between Lee and Garrett. This is because whatever rights the provision granted were exercisable “at the Contractor’s sole election.” In the circuit court, Lee moved to compel arbitration on behalf of itself and its president. But Lee never purported to make any “election” to join Allen or AU in the arbitration. Moreover, since Lee was dismissed with prejudice before any arbitration proceeding commenced, there is no dispute between Lee and Garrett pending in any “forum or proceeding” with which Garrett’s claims against Allen could be consolidated “so as to promote economy and avoid inconsistent results.” Therefore, even assuming arguendo that Allen’s interpretation of it is correct, the provision is irrelevant on the facts of this case.
*808 CONCLUSION
¶21. The arbitration provision in the Madison and Edwards subcontracts applies only to claims “between the Contractor [i.e., Lee] and the Subcontractor [i.e., Garrett].” It does not reach claims between “the Subcontractor” and one its former employees (Allen) or his limited liability company (AU). Moreover, Allen and AU are not third-party beneficiaries of the subcontracts. The subcontracts do not grant Allen or AU enforceable rights. And, in fact, the subcontracts expressly preclude the recognition of third-party beneficiaries. Finally, Alíen fails to identify any alternative basis for affirming the circuit court’s order compelling arbitration. Accordingly, Allen and AU are not entitled to compel arbitration, and we reverse and remand the case to the circuit court for further proceedings consistent with this opinion.
¶ 22. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES.
LEE, C.J., IRVING AND GRIFFIS, • P.JJ., BARNES, ISHEE, CARLTON, ' MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Kip Allen is the sole member of AU. For simplicity, this opinion sometimes refers to Allen and AU collectively as "Allen.”

. Lee's president also was named as defendant in the lawsuit, moved to compel arbitration, and was voluntarily dismissed with prejudice along with Lee.

. See, e.g., Epperson v. SOUTHBank, 93 So.3d 10, 16 (¶ 17) (Miss.2012) (‘‘[T]he Court must review the express wording of the contract as a whole.”); Cypress Springs LLC v. Charles Donald Pulpwood Inc., 161 So.3d 1100, 1104 (¶ 16) (Miss.Ct.App.2015) (“[W]e must read the contract as a whole.... ‘Particular words should not control; rather the entire instrument must be examined.’ " (quoting Pursue Energy Corp. v. Perkins, 558 So.2d 349, 354 (Miss. 1990))).

. Allen may have had rights under a separate agreement with Garrett. As noted above, no such agreement is in the record or at issue in this appeal. The point here is only that Allen is granted no such rights under the subcontracts between Ctarrett and Lee.

. Thus, in relevant part, the circuit court was affirmed by an evenly divided Court. "[A] majority of all sitting judges is required to create precedent, and therefore, it follows that a plurality vote does not create a binding result.” Buffington v. State, 824 So.2d 576, 580 (¶ 15) (Miss.2002) (quotation marks omitted).